# D. H. ROLAND DRURY ET AL., TRUSTEES, ET AL., *v.* JOSEPH L. DONOVAN.

*Attorney—Employment by Mortgage Trustees—Evidence.*

An attorney was not entitled, from the proceeds of a sale under a deed of trust for less than the sum secured thereby, to payment of his fee for conducting a specific performance proceeding by which the company, which afterwards made the deed of trust, obtained title to the property, it appearing that he was employed by that company and not by the trustees under the deed.                    pp. 588-591

Where a company about to buy property employed a title company to examine the title, and the two companies together employed an attorney to bring a specific performance suit to perfect the title, the fact that one of the trustees under a deed of trust to be executed by the purchaser to secure a loan, was to receive a large bonus in case the loan went through, did not show that the title company or the attorney was employed on behalf of the trustee.                    p. 591

No one can legally claim compensation for voluntary services to another, however beneficial, a contract of employment being necessary.                    p. 591

*Decided April 22nd, 1926.*

Appeal from the Circuit Court for Howard County, In Equity (FORSYTHE, J.).

Bill by D. H. Roland Drury and B. Erlie Talbott, trustees, against the Brightwood Sanitarium Company to foreclose a deed of trust. From an order allowing one Joseph L. Donovan a counsel fee of five hundred dollars, to be paid from the proceeds of sale, and a subsequent order directing the special auditor to restate his account accordingly, said Drury and Talbott, trustees, and Thomas R. Harney and others, holders of the notes secured by the deed of trust, appeal. Reversed.

The cause was argued before Bond, C. J., Pattison, Adkins, Offutt, Parke, and Walsh, JJ.

*Raymond S. Williams,* for the appellants.

*Edward M. Hammond* and *Joseph L. Donovan,* for the appellee.

Adkins, J., delivered the opinion of the Court.

The Brightwood Sanitarium Company in March, 1920, purchased from Frances E. Mattingly certain property in Howard County for $30,000, of which $15,000 was to be paid in cash and the balance in preferred stock of the company. Shortly thereafter the company employed D. H. Roland Drury, a loan broker, to negotiate a loan of $22,500, to be secured by a deed of trust of said property, of which amount Drury was to get $7,500 as a bonus or commission, and the balance was to be applied to the said cash payment. After the loan was negotiated, the company employed the Maryland Real Estate Title Company to examine the title and to prepare the deed of trust. The legal title was in W. Mitchell Digges, Walter J. Mitchell and Joseph C. Mattingly, but an equitable interest therein was claimed by both Frances E. Mattingly and William E. Mattingly, assignees of J. Benjamin Mattingly, and the dispute between the Mattinglys delayed for some time the consummation of the deal. A deed of trust from the company to D. H. Roland Drury and B. Erlie Talbott to secure the payment of $22,500 of promissory notes from the company to the order of Mildred B. Drury was executed on November 17th, 1920, and the deed was handed by Drury to the Maryland Real Estate Title Company, with a check for the net proceeds of the loan, with instructions to deliver the check when the sanitarium company could show a good title to the property.

By reason of the dispute between the Mattinglys, it became necessary to file a bill for specific performance of the contract of sale, and this was done and account rendered on

January 15th, 1921, by C. A. M. Wells, the attorney and vice-president of the title company, and Joseph L. Donovan, as solicitors for the sanitarium company. None of the appellants were parties to this proceeding. It resulted in a consent decree, by which the holders of the legal title were directed to convey the title to the sanitarium company. On the execution of this deed the deed of trust was delivered and recorded. Subsequently the notes secured by the deed of trust were endorsed by Mildred B. Drury to the appellants other than the trustees.

On default in the payment of these notes, on October 14th, 1921, the trustees employed the said Wells to institute foreclosure proceedings, and agreed to pay him a fee of fifty dollars if it should become necessary for the beneficiaries to purchase the property, and a hundred and fifty dollars if the property should sell for enough to pay the beneficiaries in full. Wells associated Donovan with him in the foreclosure proceeding, and on November 18th, 1921, this suit was docketed by Donovan and the deed of trust filed. Donovan then advertised the property and filed the trustees' bond, but before the day of sale the sale was enjoined on the petition of certain creditors of the company. Wells on behalf of the trustees employed William Stanley, a member of the bar of Prince George's County, to defend the injunction suit, and Stanley associated with him James Clark of the Howard County bar. The injunction having subsequently been dissolved, the property was readvertised by Stanley and Clark, representing the trustees, and sold on December 22nd, 1922, to the note holders for $15,000. A special auditor was appointed, on the petition of the trustees by their attorneys, suggesting that Donovan, the regular auditor, was disqualified by reason of his former connection with the case, and an audit was stated, to which Donovan filed exception because no fee was allowed him, and also filed a petition asking for the allowance of a fee out of the proceeds of sale. The court passed two orders, one allowing Donovan a fee of five hundred dollars and the other direct-

ing the special auditor to restate his account in accordance with the opinion of the court allowing the fee. From these orders this appeal was taken.

The sole question in the case is: Was there any contractual relation between the trustees and Donovan, either expressed or implied, by reason of which he was entitled to expect them to pay him a fee for services rendered in connection with the specific performance case? Manifestly it is for those services that the fee was allowed out of the proceeds of sale in the foreclosure case. For there can be no question that there was a definite agreement about the fee in the foreclosure case, and it is not disputed that the trustees have offered to pay that fee.

On December 22nd, 1920, Wells as vice-president of the title company wrote Donovan that the company had been employed by the sanitarium company to examine and report on the title to the property known as the "Brightwood Sanitarium" and explaining the state of the title, and that there had been deposited with the title company the sum of $14,-263.34, claimed to be the balance due under the aforesaid option, "for the purpose of obtaining a free, clear and uncumbered title to the property in question under the terms of said contract," that the holders of the legal title refuse to sign the deed unless the Mattinglys join, and some of the Mattinglys refuse to sign. "We are in a position of representing the sanitarium company, and the parties who are making the loan of $15,000 on the property, and we do not believe that the various parties in interest will agree upon any settlement." The letter further states that the company has advised proceedings, and asks if Donovan is in a position to be associated as counsel, and requesting him to advise the writer what would be his charge for services. Donovan replied promptly, accepting the employment, and subsequently conducted the proceedings until they were successfully concluded. While the matter was pending, Ralph E. Walker, who appears to have been an officer of the sanitarium company, wrote Donovan several times, complaining

of the delay, although there is no evidence that the suit was not pressed as rapidly as circumstances permitted, in all of which letters it is clear that Donovan was treated as representing that company, and in reply to one of these letters Donovan requested Walker to come to Ellicott City for a conference, and after the case was set for argument Donovan wrote Wells that he would expect either him or Walker to assist in the argument.

There was considerable correspondence between Donovan and Wells about fees, in which Wells always spoke of the sanitarium company as the party to which he looked for a fee, and Donovan also wrote to said company in reference to his fee. On June 29th, 1921, Wells wrote Donovan that he had sent Walker a bill for services, "but as yet have not received a check from the Brightwood Sanitarium Company. I sent them a bill for $250, which I hope will be satisfactory to you." Again on September 27th, 1921, Wells wrote Donovan: "I will take this matter up with the Brightwood Sanitarium Company at once, advising them that unless settlement is made within a week or ten days I shall advise you to put an attachment on the property for our services in the equity suit."

The two letters last referred to were after the decree and the recording of the deed of trust. Certainly if there had been any claim against the trustees it would have been presented.

Donovan himself testifies: "The trustees were not interested in that suit at all; they could not be interested in the property until the title was clear."

Wells testified that he was employed by the Brightwood Sanitarium Company through Walker to examine the title and did not represent the trustees directly: "The Court: What do you mean by not directly? A. When the fund was deposited with the title company, our understanding is that it will not be disbursed until the title is clear. Q. Who deposited that fund with you? A. I think Mr. Drury. Q. On the part of the trustee? A. Yes, sir. Q. Then didn't that

bring from you that letter to Mr. Donovan in which you spoke of representing these parties and asked him to help you to get the matter straightened out? A. Yes, sir. I didn't intend to say in that letter that we were representing anybody but the sanitarium company in only that we were to see to the application of the funds in our hands." The witness further testified that the sanitarium company employed him to conduct the specific performance proceedings, and that Walker and Hunt, the president of the company, came to his office for that purpose; that Drury did not employ him and he never knew Drury in the transaction; that he had no authority from Drury to employ Donovan; that the first time he was employed by Drury was in regard to the foreclosure case; that witness did not know when he was employed by the sanitarium company that it was not in a position to pay a fee.

Drury testified that he did not employ Wells or Donovan or any one else to represent him in the specific performance case, and knew nothing of it, as no preliminary report was made to him by the title company; that he knew the title company was representing the sanitarium company and was willing to take the title if the title company said it was good; that the practice is in the District of Columbia to turn the money over to the title company, with instructions not to disburse it if the title is not good.

There is no contradiction whatever of the testimony of these witnesses. It is sought, however, to draw from the first letter written by Wells to Donovan an inference that there was some understanding that the trustees had employed Wells. But in our opinion the letter when read as a whole does not bear that construction. It expressly says that Wells was employed by the sanitarium company. The title company did represent the trustees to the extent of seeing that the money agreed to be loaned, and placed in the title company's hands for disbursement, should not be disbursed unless the title was good.

In any event, both Wells and Drury deny that the title company or Wells or Donovan was employed by the trustees or Drury, or that Wells had any authority to employ Donovan to represent the trustees. If Wells was without authority from the trustees, he certainly could not bind them by any representation he made to Donovan, there being nothing to show that he was held out by the trustees as their representative.

There is no evidence of any communication whatever between Donovan or Wells and the trustees, or either of them, in reference to the specific performance case either before it was instituted or during its progress.

It cannot be inferred as a matter of law or fact that, because Drury was personally interested to the extent of a large bonus in having the transaction go through, the trustees were employing the title company to examine the title. In this case, if the fee is allowed out of the proceeds of sale, it will be paid by the note holders, who had to buy the property, and not by Drury. So far as the record shows, the person who lent the money had no interest in the bonus, and her money was in no jeopardy by reason of the complications which developed, because the deed of trust was not to be delivered or the money disbursed unless the title was found to be good.

But even if the lender or subsequent holders of the notes had been benefited by Donovan's services, that would not be the test of the matter. No one can legally claim compensation for voluntary services to another, however beneficial; there must be a contract of employment. *Miller's Eq. Proc.*, sec. 564; *Balto. & Ohio R. R. Co. v. Brown,* 79 Md. 442; *McGraw v. Canton Company,* 74 Md. 554.

It is with regret that we reach the conclusion that the orders appealed from must be reversed.

> *Orders reversed and case remanded, with costs to appellants.*