## GENERAL GERMAN AGED PEOPLE'S HOME *v.* JOHNS HOPKINS HOSPITAL

[No. 6, January Term, 1936.]

*Decided February 19th, 1936.*

The cause was argued before BOND, C. J., URNER, OF-

FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Frederick J. Singley,* with whom was *James P. Walsh* on the brief, for the appellant.

*Ward B. Coe,* with whom was *Henry D. Harlan* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

Anton Textor died testate on May 25th, 1909. He created a testamentary trust for the benefit of life tenants, with remainder over to children of two of the life tenants, and, in default of such remaindermen, "to pay to the directors of the General German Aged People's Home of Baltimore City such a sum of money which, if invested at six per cent. will support and maintain twelve beds, six for aged males and six for aged females, said funds to be known as the Anton Textor Memorial Fund.

"The residue of estate remaining in the hands of the trustees after the above mentioned provisions shall have been complied with, my said trustees are directed to pay to the Trustees of the Johns Hopkins Hospital to be applied to the treatment of deserving destitute children and to the treatment of destitute tuberculosis patients to be treated either at the Johns Hopkins Hospital or at such place or places as said Hospital authorities may designate."

The trust fund was in excess of $300,000. The life tenants died without there being living any of their issue to take, and thereupon the trust terminated and the legacy to the home and the gift of the residue of the estate to the hospital both absolutely vested. These two bodies corporate have agreed that the sum of $164,250 is a sum of money which, if invested at six per cent., will support and maintain the twelve beds contemplated by the provisions of the testator's will. On an accounting taken of the trust funds, the auditor distributed to the home the sum of $172,894.73, which is the aggregate of the agreed sum of $164,250 and the collateral inheritance tax

($8,644.73) of five per centum on the sum of $172,894.73. The rest of the trust fund was $155,343.08, and on this the collateral inheritance tax was $7,767.16, which reduced the value of the remainder of the corpus of the trust passing to the hospital to the net sum of $147,575.92.

The auditor's account, therefore, allowed to the home the net sum of $164,250 as its legacy, and to this end increased the amount of the gross legacy to $172,894.73, so that a deduction of the collateral inheritance tax of five per centum on this gross amount would assure to the home a legacy of $164,250. In other words, by the method pursued, the home paid no collateral inheritance tax, but the estate, at the expense of the hospital, paid the tax. The hospital objected to this shift of the tax from the legatee to the estate, on the ground that the legatee must pay its own collateral inheritance tax, because the testator had not otherwise provided. The hospital's exception to the account on this ground was sustained, and the home has brought this appeal.

There is no question that the testator, if he had so desired, could have provided that the collateral inheritance tax on the gift to the home should be paid out of the residuary estate. The collateral inheritance tax is, however, fundamentally a succession or legacy tax on the gift, inheritance, or distributive share and, so, is not a tax upon the estate of the donor, testator, or intestate. The statute contemplates the payment or enforcement of the tax against the donee, heir, devisee, distributee, or other donative taker. Code, art. 81, secs. 124-145, (1929 Supp.) art. 81, secs. 105, 130; *Bagby, Excrs. and Admrs.* secs. 87, 65; *Helser v. State,* 128 Md. 228, 232, 233, 97 A. 539; *Wingert v. State,* 129 Md. 28, 30, 31, 98 A. 224; *Safe Deposit & Trust Co. v. State,* 143 Md. 644-649, 123 A. 50; *Good Samaritan Hospital v. Dugan,* 146 Md. 374, 382, 383, 126 A. 85; *Downes v. Safe Deposit & Trust Co.,* 164 Md. 293, 297-299, 164 A. 874; *Lilly v. State,* 156 Md. 94, 100, 101, 143 A. 661; *Dryden v. Balto. Trust Co.,* 157 Md. 559, 146 A. 752; *Matter of Gihon's Estate,* 169 N. Y., 443, 62 N. E. 561. So, if the testator direct that the collateral

inheritance tax on a gift be paid out of his estate, he thereby increases his gift to the extent of the tax. Compare *Re Anderson* (Sask.) 1928, 4 Dom. L. R. 51, 53; *In re Irwin's Estate,* 196 Cal. 366, 237 P. 1074; *In re Lavalley's Estate,* 191 Wis. 356, 210 N. W. 941; *Farrer v. St. Catherine's College,* L. R. 16 Eq. Cas. 19, 20, 25; *In re Turnbull, Skipper v. Wade,* L. R. (1905) 1 Ch. 726. It follows that, in the absence of an explicit provision that the tax be paid out of the estate, none will be implied, unless that intention certainly appears from the terms of the instrument making the donation. *Smith v. State,* 134 Md. 473, 477, 480, 107 A. 255; *Loring v. Gardner,* 221 Mass. 571, 109 N. E. 635; *In re Lea's Estate,* 194 Pa. 524, 45 A. 337; *In re Trainer,* 248 N. Y. 171, 161 N. E. 459; *Londesborough v. Somerville,* 19 Beav. 295, 52 Eng. Repr. 363; *Sherman v. Moore,* 89 Conn. 190, 93 A. 241.

There is neither language nor provision in the will which gives color to the contention that the collateral inheritance tax was to be paid out of the residue of the estate. The first six bequests of the will were to be paid upon the testator's death to as many different persons, who were all in the class of collaterals with respect to the testator, but there is no direction that the collateral inheritance tax on the legacies was to be borne by the estate of the testator. With reference to the legacy to the home, there is neither language nor circumstance from which the inference may be drawn that, after the payment of the legacy to the home, the collateral inheritance tax on the legacy was to be paid out of the residue of the estate. The bequest is of a sum of money which, if invested at the given rate of six per centum, will support and maintain twelve beds for an equal number of male and female patients. In other words, instead of specifying the sum of money given, the testator provided a simple method of ascertaining the amount. A calculation was made by the method prescribed and the sum of money was found to be $164,250. The gift is precisely this sum, and is so because this is the sum which will support and maintain the beds, and because the testator

plainly intended to give no more. The court has no power to enlarge the testator's bounty by interpolation, so that the gift would be of the sum so fixed and of the additional sum of the collateral inheritance tax which the statute imposed on the legatee. Furthermore, the gift to the hospital is the residue which is determined by the deduction of the capital fund of $164,250, and not the residue which would remain by the deduction of the capital fund and of the amount of the collateral inheritance tax.

The argument has been pressed that the bequest of such a sum of money which, if invested at six per centum, would support and maintain twelve beds, was intended to give the home a net amount. This construction would cast upon the estate the burden of paying the collateral inheritance tax. The testator, however, is presumed to know the law that the legatee must pay the tax on the gift, unless he make clear by the language of the will that, as between his beneficiaries, he intended the tax should be paid out of his estate. It would have been so easy to have used the few, simple, common words which would have relieved the legatee of the burden of the tax, that it is but reasonable to conclude from the failure of the testator to use them, that the payment of the tax out of the testator's estate was not intended by the testator. In addition, the primary testamentary purpose was to raise a *fund,* whose *amount* was to be fixed by the capitalization at a given rate of the cost of the support and maintenance of six beds for aged men and a like number for aged woman; whose *name* was to be the "Anton Textor Memorial Fund"; and whose *use* was for the general corporate objects.

The argument cannot be sustained that the testator intended that the fund was to be exclusively employed for the support and maintenance of a prescribed or any number of beds in the home, when it is considered that the testator attempted to make no limitation upon the corporate purposes for which the fund or its income may be used. See *Doan v. Ascension Parish,* 103 Md. 662, 64

A. 314; *Board of Foreign Missions v. Shoemaker*, 133 Md. 594, 105 A. 748; *Mather v. Knight*, 143 Md. 612, 123 A. 109; *Waters v. Order of Holy Cross*, 155 Md. 146, 142 A. 297; *Home for Incurables v. Bruff*, 160 Md. 156, 153 A. 403. The soundness of this position is attested by the fact that when the testator desired his benefaction to be applied to a particular purpose in contradistinction to the general corporate uses, he made his intention plain. Thus the testator declared that the gift to the hospital was to be dedicated to the treatment of deserving destitute children and of destitute patients with tuberculosis.

After considering the question from every angle, the court is of the opinion that the testator did not make manifest by the language of the will an intention to impose the payment of the collateral inheritance tax upon the residue of his estate in exoneration of the bequest to the home. After the determination by the method specified of the capital amount of the gift, there is no word nor provision that would indicate that this capital amount was a net amount, or one clear or free of the collateral inheritance tax. *Supra;* and *Re de Rosaz* (1886) 2 Times Law Reports, 871; *Re Marcus, Marcus v. Marcus* (1887) 56 L. J. (Ch.) 830. And see *Halsbury's Laws of England* (2nd Ed.) vol. 13, sec. 439, pp. 390, 391 (succession duty) ; sec. 312, pp. 299-301 (estate duty) ; and sec. 370, pp. 337-340 (legacy duty), for illustrative cases.

The decree of the chancellor that the incidence of the collateral inheritance tax on the bequest to the home must be borne by the legatee, and is properly chargeable to the legacy of $164,250, is in conformity with the conclusion of this court on appeal.

*Decree affirmed, with costs to the appellee.*