THE UNION AND NEW HAVEN TRUST COMPANY ET AL., EXECUTORS AND TRUSTEES (ESTATE OF JOHN MORAN) *v.* KATHERINE K. SULLIVAN ET AL.

BALDWIN, O'SULLIVAN, WYNNE, DALY and PHILLIPS, Js.

Argued June 15—decided July 29, 1955

*Donald F. Keefe,* with whom were *Joseph P. Cooney* and *Walter G. Farr, Jr.,* for the defendants Diocesan Bureau of Social Service et al.

*Charles P. Roraback,* with whom was *Charles R. Ebersol,* for the named defendant et al.

*Samuel A. Persky* appeared for the plaintiff.

BALDWIN, J. This case has been reserved for advice to determine from which of two estates a federal estate tax shall be paid. The tax has been as-

sessed with respect to property disposed of under a power of appointment.

The stipulated facts, taken from the pleadings and exhibits, follow: John Moran died a resident of New Haven on June 17, 1951. He left his wife, Agnes Moran, surviving, but no close blood relatives. He was seventy-eight years old. His wife was eighty-eight. They had been married fifty-four years. His will was dated December 28, 1950. After bequeathing his automobile, jewelry and apparel to his wife, and modest sums to four persons who had worked for him or for two corporations in which he was interested, he provided, in article five, for the division of his residuary estate, amounting approximately to $2,000,000, into two trust funds. One, designated trust A, was to provide for his wife. The other, trust B, was a charitable trust in favor of certain religious and charitable organizations.[1]

---

[1] "ARTICLE FIVE. I hereby direct said Executors to divide all the rest, residue and remainder of my estate, both real and personal, of whatsoever name and nature and wheresoever situated, including therein all lapsed and void legacies, bequests, gifts and devises, into two (2) equal parts. I hereby give, bequeath and devise said two (2) parts of said rest, residue and remainder, in trust, nevertheless, to said Trustees and to their successors and assigns in trust, upon and to the following uses, trusts and purposes, viz:

"A To take, hold and manage each of said two (2) parts as separate trust funds to be designated as Trust A and Trust B, respectively, and to collect the income of each and, after paying all taxes, expenses, fees and other proper charges of any and all kinds connected with or incidental to the care, management and administration of each of said trust funds,

"B If my said wife survives me, to pay all the income of Trust A to my said wife, for and during her lifetime, payments thereof to be made to her quarterly or, in the discretion of said Trustees, as much oftener in each year as can conveniently be done; but, if at any time and from time to time, during my said wife's lifetime said income shall in the discretion of said Trustees, be insufficient for the comfortable support and maintenance of my said wife (giving due weight to the style of living and way of life to which my wife has been accustomed) said Trustees are hereby authorized and

Trust A was set up to provide a comfortable living for Mrs. Moran; all the income from it was payable to her. To make certain that she should not want, John

directed, at any time and from time to time, and as often as they in their discretion may deem necessary or desirable, [to] pay to my said wife, in addition to said income, so much of the principal of said trust fund as said Trustees, in their discretion, may deem necessary or desirable for her comfortable support and maintenance (exercising said discretions liberally for the benefit of my said wife); and upon her death the Trustees shall pay, convey, assign, set over and deliver, free and discharged of said trust, all the principal thereof to or among such person or persons and in such proportions and manner and upon such estates, whether outright or in such lesser estates, or in trust or otherwise, as she may appoint by her last will and testament, executed by her after my death and specifically referring to and exercising the power of appointment herein given to her. Such power of my said wife to appoint the entire corpus free of this trust shall be exercisable in favor of her estate or any other appointee or appointees without limitation and shall be exercisable by her alone and in all events.

"C  Until my said wife's death, to accumulate the net income of Trust B, adding same annually to the principal thereof for the benefit of the corporations, institutions and organizations named in Sections D and E of this Article, in the proportions and upon the terms provided therein. If at any time or times, during my said wife's life, the income of Trust A together with such principal as she may receive therefrom shall, in the discretion of the Trustees be insufficient to suitably maintain her in as much comfort as she now enjoys, I request the Trustees to donate to my said wife, out of the income of Trust B, such sums as may from time to time, in their discretion, be necessary to suitably maintain her in as much comfort as she now enjoys. The Trustees are hereby authorized and empowered to make such gifts without the necessity of obtaining the consent or approval of any of said corporations, institutions or organizations.

"D  Upon the death of my said wife, I direct that the net income of Trust B or, if she should predecease me, then the net income of said entire rest, residue and remainder which shall in that event constitute one trust fund or if, having survived me, my said wife shall fail effectively to exercise the power of appointment given her in Section B of this Article of my will, then the net income of both Trust A and Trust B which shall in that event be combined as one trust fund, shall be paid annually or, in the discretion of the Trustees, as much oftener in each year as can conveniently be done, until such time as all of my stock in The Guilford-Chester Water Company and The Clinton Electric Light and Power Company shall have

Moran gave his trustees the power to apply the principal of trust A and so much of the income of trust B as they might deem necessary, without securing the consent of the beneficiaries of trust B, to her maintenance during her lifetime. He also gave her a general power of appointment over the principal of trust A. If she failed to exercise this power, the two trust funds were to be combined into one after her death, and the income was to be paid to the beneficiaries of trust B. None of the income from trust B was to be paid to the beneficiaries thereof until Mrs. Moran died. Thereafter, they were to receive the income until certain stock in The Guilford-Chester Water Company and The Clinton Electric Light and Power Company, two local utilities which John Moran controlled, was sold, or until twenty years after Mrs. Moran's death, whichever occurred first. The principal was then to be apportioned among them pursuant to percentages stated in the will.

John Moran's estate was valued for tax purposes at nearly $2,000,000. A federal estate tax of $71,316 has been assessed and paid. It is estimated that the state succession tax will be about $93,000. After all deductions, including federal and state taxes assessed against his estate and payable out of trust

been sold, but for no longer than twenty (20) years after my wife's death, as follows: [Here are listed twelve religious and charitable organizations].

"E When all of my said stock in The Guilford-Chester Water Company and The Clinton Electric Light and Power Company shall have been sold (my wife being then dead), or twenty (20) years after the death of my said wife, whichever is the sooner, I direct the Trustees or the Executors, as the case may be, to pay, convey, assign, set over and deliver, free and discharged of said trust all the principal thereof, together with any accumulated income, as follows: [Here are listed the twelve religious and charitable organizations which were designated in paragraph D above]."

B, approximately $971,000 will be allocable to trust A and $798,000 to trust B.

In article eight, at the end of his will, John Moran provided for the payment of inheritance, transfer and estate taxes out of the funds allocable to trust B.[2] The interpretation of this article presents the issue in the case.

Agnes Moran died on March 30, 1952, before her husband's estate was settled. Neither trust A nor trust B had been set up. She had made a will on July 13, 1951, twenty-six days after her husband's death, in which, in article six, she exercised the power of appointment given to her in her husband's will in favor of a brother and eight nieces and nephews. The power having been exercised in this manner, the estate of Mrs. Moran became subject to a federal estate tax estimated to be approximately $271,000. The allocation of the ultimate burden of so much of this tax as is attributable to the exercise of the power of appointment affords the basis for the present controversy. The questions presented in the reservation appear in full in the footnote.[3]

---

[2] "ARTICLE EIGHT. I hereby direct that all legacy, succession, inheritance, transfer and estate taxes, levied or assessed upon or with respect to any property which is included as a part of my gross estate for the purpose of any such tax, including, but not limited to, the proceeds of any policy of insurance on my life, or any jointly owned property, shall be paid by my Executors solely out of the property comprising that portion of my estate described herein as Trust B, and shall not be pro-rated or apportioned among or charged against the respective devisees, legatees, beneficiaries, transferees or other recipients, nor charged against any other property passing or which may have passed to any of them and that my Executors shall not be required to seek reimbursement for any portion of any such tax from any such person."

[3] "(a) Should the portion of the Federal estate tax on the estate of Agnes Moran assessed with respect to the property disposed of by virtue of her exercise of her power of appointment under Article Five of the will of John Moran be paid out of assets comprising

The answers to these questions require that we find and effectuate John Moran's intent with respect to the payment of this tax. We look to the will as an entirety and examine the particular words and language used in the light of the circumstances under which they were written. *Chase National Bank* v. *Guthrie,* 139 Conn. 178, 182, 90 A.2d 643. Do they express an intention that the funds in trust B shall be used to pay the federal estate tax assessed against the estate of Agnes Moran because she exercised the power of appointment? The will appears to have been prepared by an expert draftsman. At this point, it is well to state that John Moran disposed of his estate in a manner allowed by law to obviate the payment of large estate and inheritance taxes. The corpus of trust B is exempt as a bequest for charitable purposes. Int. Rev. Code of 1939, § 812(d), as amended, 64 Stat. 959 (1950). By giving his widow a power of appointment over the corpus of trust A, from which she was to receive support during her lifetime, he qualified this corpus for the federal estate tax marital deduction provisions. Int. Rev. Code of 1939, § 812(e)(1)(A), (F), added by 62 Stat. 118 (1948). In default of the exercise of the power, the corpus of trust A would pass to charitable purposes and would likewise be exempt from the federal estate tax.

Succession taxes are payable by the recipients of the property with respect to which the tax is as-

---

Trust B of the estate of John Moran or passing to the beneficiaries under Trust B?

"(b) Should the portion of the Federal estate tax on the estate of Agnes Moran assessed with respect to the property disposed of by virtue of her exercise of her power of appointment under Article Five of the will of John Moran be paid out of assets comprising Trust A of the estate of John Moran or passing to the beneficiaries under Trust A?"

sessed. *Hackett* v. *Bankers Trust Co.,* 122 Conn. 107, 126, 187 A. 653; General Statutes §§ 2052, 2060. Prior to 1945, estate taxes were payable out of the general estate. *McLaughlin* v. *Green,* 136 Conn. 138, 140, 69 A.2d 289; *Ericson* v. *Childs,* 124 Conn. 66, 81, 198 A. 176. Chapter 102 of the General Statutes, enacted in 1945, provides that estate taxes are payable pro rata by the recipients of the taxable property in essentially the same manner as are succession taxes. The operation of these rules can be altered or avoided by testamentary direction. *Starr* v. *Watrous,* 116 Conn. 448, 451, 165 A. 459; *Sherman* v. *Moore,* 89 Conn. 190, 194, 93 A. 241. The testamentary direction, however, must be expressed in specific and unambiguous language because, in most cases, it can have a very material effect upon those who share in that part of the estate from which it is directed that the taxes are to be paid. *McLaughlin* v. *Green,* supra, 142.

In article eight, John Moran directed that "all" taxes "levied or assessed upon or with respect to any property which is included as a part of [his] gross estate for the purpose of any such tax" should be paid solely out of the portion of his estate comprising trust B and that they should not "be prorated or apportioned among or charged against the respective devisees, legatees, beneficiaries, transferees or other recipients, nor charged against any other property passing or which may have passed to any of them." It is true that the recipients of the corpus of trust A under the power of appointment exercised by Agnes Moran derive their title from John's, and not from Agnes', estate. *McMurtry* v. *State,* 111 Conn. 594, 601, 151 A. 252. This, however, is not determinative of our question. The value of the corpus of trust A is included in Agnes

Moran's gross taxable estate, not because her estate had title to it but because she exercised a power of appointment over it. Int. Rev. Code of 1939, § 811(f), as amended, 65 Stat. 91 (1951). Article eight by its very terms is concerned with taxes assessed with respect to property included in the gross estate of John Moran "for the purpose of any such tax," i.e. for the purpose of legacy, succession, inheritance, transfer and estate taxes on his estate. It anticipates the circumstances he believed would exist at the time of his death. It directs that the taxes so referred to shall be paid by his executors solely out of the property comprising the portion of his estate known as trust B and shall not be "charged against any other property passing or which may have passed to [his beneficiaries]." The will thus deliberately deals only with transfers already made or those to be made by its direction. It concerns only the taxes normally payable in the course of the settlement of John Moran's estate, and not the taxes to be assessed in the future with respect to some other person's gross taxable estate.

Although Agnes Moran was an aged woman, John could not foresee how long she might outlive him. He took every precaution to care for her. However, he could not know when or whether the power of appointment would be exercised. His widow might exercise it in favor of someone unknown to him. The amount of any tax on the exercise of the power of appointment or, indeed, whether there would be any tax was also problematical. A testator who caused a will to be drafted with such meticulous attention to the incidence of taxes could not conceivably have intended by article eight to leave so much to chance.

The language and the intent of article eight are

not unusual. This article is taken almost verbatim from the form recommended by the committee on bank and bar relations of the Connecticut Bar Association and the Connecticut Bankers Association in a pamphlet dated August 1, 1946. See 3 Locke & Kohn, Conn. Probate Practice, p. 160; *McLaughlin* v. *Green,* 136 Conn. 138, 145, 69 A.2d 289. This tax clause was obviously designed to nullify the effect of the statute on proration of federal and state estate taxes, now chapter 102 of the General Statutes, enacted the previous year. Sup. 1945, §§ 314h-319h, 322h. Since the proration statute by its terms covered only taxes on the decedent's own estate, it may fairly be inferred that the testator, by using the clause drafted by the joint committee, referred only to taxes on his own estate.

This is a case of first impression in Connecticut. The courts of Illinois, New York and Pennsylvania, however, have held, for reasons which appear persuasive to us, that clauses similar to the one in the case at bar do not apply to taxes assessed against the estate of a person to whom a testator had given a power of appointment. *Page* v. *Wright,* 342 Ill. App. 352, 356, 96 N.E.2d 634; *Matter of Duryea,* 277 N.Y. 310, 317, 14 N.E.2d 369; *Matter of Vanderbilt,* 180 Misc. 431, 436, 39 N.Y.S.2d 941, aff'd, 295 N.Y. 964, 68 N.E.2d 50; *Marvin's Estate,* 26 Pa. D. & C. 527, 533.

Accordingly, we answer question (a) "No." In the view we take of the case, question (b) cannot be answered categorically, at least without construing the tax clause in the will of Agnes Moran and considering the nature and devolution of her other taxable estate. Since the interpretation of her will has not been argued before us, we decline to answer the question.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.