W. LUTHER HALL ET AL. *v.* JULE ABNER
JOHNSON, PERSONAL REPRESENTATIVE
OF THE ESTATE OF CATHERINE
W. JOHNSON

[No. 518, September Term, 1977.]

*Decided January 17, 1978.*

Appeal from the Orphans' Court for Prince George's
County (ONEGLIA and HEFFRON, JJ.).

The cause was argued before GILBERT, C. J., and MOYLAN and LISS, JJ.

*Paul Mannes,* with whom was *Philip M. Glick* on the brief, for appellant W. Luther Hall. *Theodore Kligman* for other appellant.

*Alexander Breuer* for appellee.

GILBERT, C. J., delivered the opinion of the Court.

When Dr. Catherine W. Johnson of Fort Foote, Mayland, died on November 19, 1973, she left a gross estate of $579,576.71, a will containing a marital trust for the benefit of her widower, a number of specific bequests, a residuary trust for the benefit of one son who has suffered from mental illness, and a controversy over whether the Federal Estate Tax is to be apportioned among the legatees or borne by the estate so that all bequests are free and clear of taxation.

The provenance of this litigation is found in the Last Will of Dr. Johnson immediately following the formal recitation of her *animus testandi. The "FIRST"* clause of the will reads in pertinent part:

> "I *direct that all lawful debts* I owe at the time of my death, including funeral and administration expenses and the expenses of my last illness . . ., *and all estate and inheritance taxes, be paid* as soon after my death as can lawfully and conveniently be done. I further direct that the amount spent for my funeral . . . be left to the discretion of my Executor [1] without regard to the amount authorized by law." (Emphasis supplied.)

The other two clauses of the will that have led to some difficulty among the legatees are:

> "*THIRD: Specific Bequests*
>
> I hereby give and bequeath the following sums to

---

1. We pointed out in Bugg v. Maryland Transp. Auth., 31 Md. App. 622, 626, n. 3, 358 A. 2d 562, 565 (1976), that the use of the designation "executor" is passe. *See* former Md. Ann. Code art. 93, § 1-101 (n) and former Subtitle VI of art. 93. The proper designation is "personal representative." Md. Est. & Trusts Code Ann. §§ 1-101 (o), 6-101 *et seq.*

the following named persons, in grateful appreciation of their kindness to me and my family, each gift and bequest being subject to the condition that the beneficiary survive me:

. . .

(H) To my kind and competent physician, DR. W. LUTHER HALL, . . . or, if he predeceases me, then to his wife, ELIZABETH HALL, or, if they predecease me, then in equal shares to such of their children as survive me, One Hundred (100) shares of common stock of Marriott Corporation and Eight Hundred (800) shares of common stock of Emerson Electric Co.

. . .

(j) To DR. JAMES M. BACOS, . . . in appreciation of his kind and competent medical care, Four Hundred (400) shares of common stock of Emerson Electric Co."

The will was admitted to probate in December 1973, and the testatrix's son, Jule Abner Johnson, was designated as the personal representative of his deceased mother's estate, a role in which he is still cast, as appellee, in this appeal.

Approximately, six months later, the surviving husband and his daughter instituted a caveat proceeding in which they sought to void the bequest to Doctors Hall and Bacos. After a not unusual amount of preliminary sparring by way of discovery proceeding, the matter of the caveats was settled,[2] but apparently not without producing the wounds which festered into the instant appeal.

The administration of the estate continued without further complication until the appellee sought, in January 1977, to apportion the payment of the Federal Estate Tax among the several legatees. The apportionments for taxes and interest due amounted to slightly more than twenty (20) percent of

2. By the terms of the settlement the bequests to Dr. Hall and Dr. Bacos were reduced by fifteen (15) percent. Thus, Dr. Hall received 85 shares of Marriott and 680 shares of Emerson Electric. Dr. Bacos received 340 shares of Emerson Electric.

the bequest. Hence, in the case of Dr. Hall, the tax totals $5,785.62. Dr. Bacos was assessed $2,733.67. Drs. Hall and Bacos opposed the apportionment, assigning as reason, that "Article FIRST" of Dr. Johnson's will directed the personal representative to pay "all estate and inheritance taxes." Therefore, the appellants reasoned that the bequests made to them were free and clear of any tax. In short, the tax was to be charged, in this case, exclusively against the residuary trust. The Orphans' Court for Prince George's County disagreed with the position taken by the appellants and ordered the apportionment of the federal estate taxes. This appeal ensued.

Although the appellants present three arguments as to why they believe the Orphans' Court erred, the real issue before us may be stated thusly: Did the Orphans' Court err in apportioning federal estate taxes among the legatees under the will in view of "Article FIRST" of that will?

Md. Est. & Trusts Code Ann. § 11-109, the Maryland Uniform Estate Tax Apportionment Act,[3] provides in pertinent part:

> "(b) *Persons among whom tax to be apportioned.* — The tax shall be apportioned among all persons interested in the estate. The apportionment shall be made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values used in determining the tax shall be used for that purpose."

The statute then sets out the procedure for determining apportionment, the method of proration, and the allowance for exemptions, deductions, and credits. Md. Est. & Trusts Code Ann. § 11-109 (c) (d) and (e).

---

3. At the time of Dr. Johnson's death, former Md. Ann. Code art. 93, § 11-109 was viable and controlling. When the Legislature recodified certain portions of Md. Ann. Code by 1974 Md. Laws, ch. 11, articles 16, 21, 36, 37A, 43, 49A, 75B, and 90 were repealed. Article 93 was repealed in its entirety. The repealed articles and sections were reenacted as the Estates and Trusts Article of the current code. The only change made to § 11-109 was in subsections (j) and (k), and those changes were stylistic only. For purposes of simplicity, we shall refer to the present code.

There is, however, a clause in the Act that permits a testator to avoid apportionment. The escape hatch is found in Md. Est. & Trusts Code Ann. § 11-109 (k), which provides:

> *"Except as otherwise provided in the will, or other controlling instrument,* the provisions of . . . [the Maryland Uniform Estate Tax Apportionment Act] shall apply to the apportionment of, and contribution to, the federal and Maryland estate taxes." (Emphasis supplied.)

It is the italicized portion of subsection (k) of § 11-109 that appellants assert that Dr. Johnson invoked through the use of the language, in "Article FIRST" of her will, "I direct that all lawful debts I owe at the time of my death . . . and all estate and inheritance taxes, be paid as soon after my death as can lawfully and conveniently be done."

Appellants assert that their position is bolstered by "Article TENTH" of Dr. Johnson's will. Subsection (B) of that article authorizes and empowers the Personal Representative "[t]o pay all expenses enumerated in Article FIRST hereof, either from the real or personal property of my estate, as my . . . [Personal Representative] in his discretion may determine."

The precise issue put to us does not appear to have been decided by an appellate court of this State, although courts of other States have come to grips with the matter. We bear in mind the mandate given us by the General Assembly that:

> "Such of the provisions of this section [Md. Est. & Trusts Code Ann. § 11-109] as are uniform with statutes enacted in other states shall be so construed as to effectuate their purpose to make uniform the laws of those states which enact such provisions." Md. Est. & Trusts Code Ann. § 11-109 (i).

On oral argument, appellee conceded that in view of the legislative direction relative to uniformity of construction, Md. Est. & Trusts Code Ann. § 11-109 (i), that cases decided on the issue in those States which have adopted the Uniform Act, n. 5, *infra,* are to be considered more persuasive than

opinions from the courts of those States which have not statutorily caressed the Act to their bosom.

Words, or words[4] closely akin to those used in "Article FIRST" of the will of Dr. Johnson have been held to be sufficient to show a clear, unambiguous manifestation of testamentary intent to shift the payment of estate taxes from the many to the few; from more than one to one.

The legislative mandate is not as easy to follow as it is to articulate. This is so because insofar as we have been able to ascertain, a limited number of States have adopted the Uniform Estate Tax Apportionment Act.[5] There is a paucity of judicial decisions on the particular point before us in those States that have embraced the Uniform Act. Of the few cases that we have been able to find, only two are directly on point. The first is *In re Ogburn's Estate,* 406 P. 2d 655 (Wyo. 1965). There, the testatrix's will provided:

> "FIRST: I direct the payment of all my just debts, *taxes,* funeral expenses and expense of administration of my estate." 406 P. 2d at 657 (Emphasis supplied.)

Then followed certain specific bequests and a residuary clause. The question arose as to whether the federal estate taxes were to be paid from the residuary estate in the light of the direction in the FIRST Article that taxes be paid or apportioned under the Wyoming Estate Tax Apportionment Act. The Supreme Court of Wyoming noted that the testatrix was a successful business woman cognizant of estate taxes, and although the particular clause of the will was not a model of clarity, it "sufficiently expressed the intention of the

---

4. Quarreling over the meaning of words is not uncommon to the legal profession. As G.K. Chesterton (1874-1936) put it, "What is the good of words if they aren't important enough to quarrel over? Why do we choose one word more than another if there isn't any difference between them?"

5. The ten (10) States which have thus far adopted either the 1958 or 1964 versions of the "Uniform Estate Tax Apportionment Act" are: *Maryland,* Md. Est. & Trusts Code Ann. § 11-109; *Alaska,* Alaska Stat. § 13.16.610; *Hawaii,* Haw. Rev. Stat. § 236A-1 to § 236A-9; *Michigan,* Mich. Comp. Laws Ann. §§ 720.11-720.21; *New Hampshire,* N.H. Rev. Stat. Ann. § 88-A:1 to § 88-A:12; *North Dakota,* N.D. Cent. Code § 30.1-20-16; *Oregon,* Or. Rev. Stat. § 116.303 to § 116.383; *Rhode Island,* R.I. Gen. Laws § 44-23.1-1 to 44-23.1-12; *Vermont,* Vt. Stat. Ann. tit. 32, §§ 7301 to 7309; *Wyoming,* Wyo. Stat. §§ 2-336 to 2-346.

testatrix to direct against statutory apportionment of taxes imposed on [the specific bequest] gifts." The court observed that, "[i]t is only by such an interpretation that force and effect can be given to such language . . ." as that utilized by the testatrix. 406 P. 2d at 660.

The second case. *In re Crozier's Estate*, 105 N. H. 440, 201 A. 2d 895 (1964), interpreted a clause reading:

"I direct the payment of all my just debts, funeral charges, expenses of administration and inheritance taxes out of my estate as soon as practicable after my decease."

The Supreme Court of New Hampshire believed that the decedent intended that the State inheritance and federal estate taxes were to be paid from the residuary estate. The court conceded that the language of the testatrix was "artless and ambiguous but in the last analysis an effective provision against apportionment of death taxes." 105 N. H. at 442, 201 A. 2d at 897.

The principal rule in determining the effect of a tax clause in a will is to glean the testamentary intent. We look to the four corners of the will to ascertain that intent. Once we have determined that intention, it prevails. In short, intention is the thread by which we weave our way through the Minotaur's maze. *Wilmington Trust Co. v. Copeland*, 33 Del. Ch. 399, 94 A. 2d 703 (1953); *Union Bank & Trust Co. v. Bassett*, 253 S.W.2d 632 (Ky. 1952); *Brauburger v. Sheridan*, 7 N.J. Super. 576, 72 A. 2d 363 (1950); *In re Bayne's Will*, 31 Misc. 2d 296, 102 N.Y.S.2d 525 (1950); *Whitlow v. Thomas*, 54 Ohio L. Abs. 41, 86 N.E.2d 622 (1949); *Norton v. Jones*, 210 S.W.2d 820 (Tex. Civ. App. 1948); Annot., 37 A.L.R.2d 7 (1954); Annot., 16 A.L.R.2d 1282 (1951); Annot., 15 A.L.R.2d 1216 (1951). *See also General German Aged People's Home v. Johns Hopkins Hosp.*, 170 Md. 128, 183 A. 247 (1936); [6] *Union and New Haven Trust Co. v. Sullivan*, 142 Conn. 685, 116 A. 2d 908 (1955); *McLaughlin v. Green*, 136 Conn. 138, 69 A. 2d 289 (1949); *In re Estate of Hilliar*, 498 P. 2d 1237 (Wyo. 1972); *In re Ogburn's Estate*, 406 P. 2d 655 (Wyo. 1965).

6. This case is sometimes cited as Textor v. Textor, apparently taking that name from the testator, Anton Textor.

An apportionment statute, such as Md. Est. & Trusts Code Ann. § 11-109, is an expression of the legislative policy that federal estate taxes are to be levied among the beneficiaries in proportion that benefit received bears to the total taxable estate. Absent direction from the testator expressed in the will to the contrary, the personal representative is charged by § 11-109 not only with seeing that the federal estate tax is paid, but also with the duty of fixing the impact of the tax upon each beneficiary's share in the proportion that the share contributed to the total tax. *See Estate of Hendricks,* 11 Cal. App. 3d 204, 89 Cal. Rptr. 748 (1970); *In re Cushing's Estate,* 113 Cal. App. 2d 319, 248 P. 2d 482 (1952); *In re Myers' Trust,* 20 Misc. 2d 990, 190 N.Y.S.2d 566 (1959). "In a tax allocation problem the text of the will is to be scanned only to see if there is a clear direction *not* to apportion; and if such *explicit* direction is not found, *construction of text ceases because the statute states the rule." In re Mills' Estate,* 189 Misc. 136, 64 N.Y.S.2d 105, 110 (1946), *aff'd* 272 App. Div. 229, 70 N.Y.S.2d 746 (1947), *aff'd* 297 N. Y. 1012, 80 N.E.2d 535 (1948) (Emphasis in original text.); *Oviatt v. Oviatt,* 24 Ohio Misc. 98, 260 N.E.2d 136 (1970).

Since the statute represents the Legislature's judgment of the normal intent of a testator, any provision in a will which endeavors to render the statute inapplicable must do so in such a manner that no other reasonable interpretation can be made. *In re Estate of Erieg,* 439 Pa. 550, 267 A. 2d 841 (1970).

The appellee, in the case *sub judice,* relies upon a number of cases [7] which hold basically that in order to defeat an

---

7. Weinberg v. Safe Deposit and Trust Co. of Baltimore, 198 Md. 539, 85 A. 2d 50 (1951); Bouse v. Hutzler, 180 Md. 682, 26 A. 2d 767 (1942); General German Aged People's Home v. Johns Hopkins Hosp., 170 Md. 128, 183 A. 247 (1936) ("Textor v. Textor"); Maron v. Girard Trust Co., 168 Md. 692, 179 A. 324 (1935); Godwin v. Kemp, 129 Md. 159, 98 A. 495 (1916); Iglehart v. Kirwan, 10 Md. 559 (1857); In re Estate of Armstrong, 17 Cal. Rpt. 138, 366 P. 2d 490 (1961); In re Estate of Hendricks, 11 Cal. App. 3d 204, 89 Cal. Rpt. 748 (1970); In re Estate of Buckhantz, 120 Cal. App. 2d 92, 260 P. 2d 794 (1953); In re Estate of Cushing, 113 Cal. App. 2d 319, 248 P. 2d 482 (1952); Union and New Haven Trust Co. v. Sullivan, 142 Conn. 685, 116 A. 2d 908 (1955); McLaughlin v. Green, 136 Conn. 138, 69 A. 2d 289 (1949); Merchants Nat'l Bank of Boston v. Merchants Nat'l Bank of Boston, 318 Mass. 563, 62 N.E.2d 831 (1945); In re Pepper's Estate, 307 N. Y. 242, 120 N.E.2d 807 (1954); In re Mills' Estate, 272 App. Div. 229, 70 N.Y.S.2d 746 (1947); In re Estate of Wise, 37 Misc. 2d 403, 235 N.Y.S.2d 633 (1962); In re Estate of Cutler, 26 Misc. 2d 804, 209 N.Y.S.2d 358 (1960); In re Myers' Trust, 20 Misc. 2d 990,

apportionment statute the intent of the testator must be clear and unambiguous, a statement with which we are in complete accord. The problem lies in whether, in the case now before us, "Article FIRST" sets out such a statement.

Those who contend against the statutory apportionment of Md. Est. & Trusts Code Ann. § 11-109 must bear the burden of proof by a preponderance of evidence. *In re Pepper's Estate,* 307 N. Y. 242, 120 N.E.2d 807 (1954). We shall now consider whether appellants have done so, bearing in mind the aforegoing discussion.

We note that the testatrix was a medical doctor with a degree of success in order to accumulate an estate of more than half a million dollars, exclusive of insurance, except for a nominal policy of $1,837.03. She sought and obtained competent legal advice in the preparation of her will, and in order to take every possible tax advantage, she created a marital trust for her aged husband. She further created a residuary trust for her son. A large portion of her estate consisted of stocks and bonds totaling $247,109.90 in value.

We think it safe to infer that Dr. Johnson possessed a reasonable command of the English language and knew what she had written in "Article FIRST" of her will. We think it equally safe to infer further that when she directed "all estate and inheritance taxes, be paid as soon after" her death as could be lawfully and conveniently done, she was not simply acknowledging the existence of the federal estate tax and uttering mere platitudes relative to payment thereof. We think Dr. Johnson to have said, in effect, "I direct that . . . all estate and inheritance taxes, be paid" as soon as it is lawful and convenient to so do. We further think the doctor meant that the federal estate taxes were to be deducted from the residuary trust, and that all other testamentary gifts would pass to the beneficiaries free and clear of the tax. To hold otherwise would be to attach absolutely no meaning to anything contained in "Article FIRST" except the non-limitation on the funeral expenses. Certainly, the first

190 N.Y.S.2d 566 (1959); Oviatt v. Oviatt, 24 Ohio Misc. 98, 260 N.E.2d 136 (1970); In re Estate of Erieg, 439 Pa. 550, 267 A. 2d 841 (1970); In re Estate of Henderson, 46 Wash. 2d 401, 281 P. 2d 857 (1955); In re Estate of Hilliar, 498 P. 2d 1237 (Wyo. 1972); In re Ogburn's Estate, 406 P. 2d 655 (Wyo. 1965).

portion of the Article is a mere formal recitation directing the personal representative to do what the law clearly requires be done, *but* the law does not require that bequests be paid over free and clear of federal estate taxes. Indeed, as we have seen, Maryland law requires otherwise, unless the will provides to the contrary.

We think that Dr. Johnson's will did clearly so provide. The federal estate taxes should be deducted from the residuary trust and paid over to the Treasurer of the United States. The appellants should have received their legacies free and clear of federal estate, Maryland estate, and Maryland inheritance taxes. In our view, the Orphans' Court was wrong in obstructing Dr. Johnson's intent and, in effect, rewriting her will.

> *Judgment reversed.*
> *Case remanded to the Orphans'*
> *Court for the passage of an order*
> *denying apportionment.*
> *Costs to be paid by the appellee.*