Joseph A. Cox, S.
In this proceeding for the settlement of the intermediate account of .the executors the petition prays construction of provisions of the will which have created nine separate and distinct questions involving its interpretation. These are dealt with below in numerical sequence different from that employed in the pleadings.
First
In paragraph Third of her will, the testatrix made 27 gifts to individuals and charitable institutions. Each of the bequests was described as consisting of “ a sum equivalent to (a fixed percentage) of my estate.” The parties are in dispute as to *993 whether the language of gift requires that the legacies be measured in terms of a percentage of the gross or of the net estate and, if the latter, as to the formula for determination of its dimensions. The court construes this direction of the testatrix as requiring division of the estate upon its net rather than upon its gross value. “It is conceded that as a general rule, absent some provision to the contrary, debts and administration expenses are deductible in computing the value of an estate when a fraction thereof has been bequeathed”. (Matter of Petroff, 5 Misc 2d 318, 320; see, also, Matter of Marxuach, 9 Misc 2d 784; Matter of Whitman, 125 N. Y. S. 2d 165.)
There is nothing to be found anywhere in this will to suggest that the testatrix entertained any notion of making these bequests in terms of percentages of the gross estate and as a consequence the court cannot concur in the proposition that that was her intention.
The formula to be employed for measurement of the net estate requires that there be deducted from the gross value of all of the assets left by the deceased a sum equal in amount to the total of the debts, estate taxes and expenses of administration. To be included in the latter category is the sum of $300,000 paid to the mother of the testatrix in consideration of her withdrawal of objections to the admission of the will to probate. To save these legacies for the respondents it was necessary that the proponents succeed in the contest by victory after trial or by purchasing peace for the estate from the objectant. Either course entailed the expenditure of estate funds. That the costs of litigation, including counsel fees, constitute expenses of administration within the ordinary meaning of the term, is plainly beyond dispute and the court is unable to ascertain any distinction between payments for that purpose and the cost of the settlement to which all of the respondents agreed.
Second
Three of the bequests established in paragraph Third of the will were left to married couples. Common to all of these legacies was the direction “To ‘ A and B, ’ or their survivor, a sum equivalent to (a fixed percentage) of my estate.” That these bequests were intended by the testatrix to be shared by husband and wife jointly and equally is not open to doubt and the court so holds (Matter of Miller, 202 Misc. 763).
Third
In subdivision (w) of paragraph Third of the will, provision is made for a bequest ‘ To St. Thomas More Protestant Church, *994 located at 65 East 89th Street, New York City, a sum equivalent to one-half of one percent (% of 1%) of my estate.”
It has been stipulated by all of the'parties that the affidavits of persons familiar with the facts may be treated by the court as the equivalent of common-law proof and the record upon which determination of the questions presented for solution may be made. In connection with the particular issue to which this provision of the will gives rise, there have been received for filing the affidavits of Charles A. Wolfe, the draftsman of the will, and Louis C. Haggerty, attorney for the Roman Catholic Church of St. Thomas More which is located at the address described in the quoted text. Mr. Wolfe states: “ As to subdivision W of paragraph Third ’ of the Will, St. Thomas More R. C. was written by me in my notes of instructions. However, the right leg of the ‘ R ’ was not extended far enough and thus the ‘ R ’ appeared as though it were a ‘ P ’. In preparing the Will I mistakenly assumed what appeared to be a P to be a symbol for the word Protestant ’. I later realized that the initials were R. C. and were intended to indicate the words Roman Catholic. It is my clear recollection that the decedent’s instructions and intent were that the legacy in question be for St. Thomas More Roman Catholic Church located at 65 East 89th St., New York City.”
The application here of the rule in Kernochan v. Farmers’ Loan & Trust Co. (187 App. Div. 668, 672, affd. 227 N. Y. 658) to the effect that “ a legacy will not be defeated by a misnomer ” is too apparent to require extension of the discussion and the court holds, there being no other claimant, that the bequest is payable to the Roman Catholic Church of St. Thomas More located at 65 East 89th Street, New York City.
Fourth
In subdivision (D) of paragraph Third of the will, a legacy of one tenth of one percent of 'the estate is left to a gentleman named as “ George Eustin.” The affidavits of intimates of the deceased and the draftsman’s acknowledgment of an error in the spelling of the name make it perfectly plain that the legatee intended by the testatrix was her friend of long standing, the respondent, Mr. George Houston, and the will is so construed (Lefevre v. Lefevre, 59 N. Y. 434).
Fifth
In disposing of a portion of the remainder of one of the two residuary trusts, the testatrix provided as follows in paragraph Sixth (subd. [I], cl. [c]):
*995 “ (c) The remaining one-third (%rd) thereof I give, devise and bequeath to the following named charitable organizations, each in equal amount to the other:
CATHOLIC CHARITIES OF THE ARCHDIOCESE OF NEW YORK; FEDERATION OF PROTESTANT WELFARE AGENCIES;
FEDERATION OF JEWISH PHILANTHROPIES OF NEW YORK;
GREATER NEW YORK FUND ;
UNITED HOSPITAL FUND ;
POLICE ATHLETIC LEAGUE;
BOY SCOUTS OF AMERICA and GIRL SCOUTS OF AMERICA.”
The question which this provision of the will creates may be stated in these terms: did the testatrix intend to make a gift of an equal share of the remainder disposed of to the eight charitable institutions named or was it her intention, as expressed in the juxtaposition of the titles of the last two legatees designated, that the first six are each entitled to a one-seventh share of the total and the Boy Scouts of America and the Girl Scouts of America to a fourteenth apiece? The position in which the name of a legatee appears in a will may have an important bearing upon the rights of its wearer (Matter of Turner, 206 N. Y. 93; Matter of Cook, 193 Misc.261). In the cases cited, for example, it was held that where the number of a series of like articles left to designated legatees fell short of providing a like gift for each member of the group then those whose names appeared at the top of the list took in preference to those at the bottom.
The rationale of the cases cited applies here and acquires added emphasis from the fact that the title of each of the other legatees was placed upon a separate line and separated by semicolons from the rest of the roster. The distinction in the treatment of the Scout legacies requires the court to hold that the two organizations each take only a one-fourteenth share of the total bequest.
Sixth
Paragraph Ninth of the will provides in part as follows: “If any person, corporation, or institution, whether named in this, my Last Will and Testament, or in any codicil thereto, or otherwise, shall directly or indirectly institute, become a party to, or aid or abet in any proceedings to set aside, interfere with or annul the whole or any provision of this Will, or shall offer any objections to the probate thereof, or contest the validity of any provision thereof, whether valid or invalid, then and in that event I hereby revoke the provisions, if any, of this, my Last Will, in his, her, its or their favor, * * *.”
*996 The executors take the position this provision of the will operates to forfeit the legacy of Mr. Frank A. Mutchler, Jr., hut . their demonstration of facts upon which they rely in support of their argument falls very far short of depriving the legatee of the protection of section 126 of the Decedent Estate Law which provides as follows: ‘ Limitations on conditions attached to a legacy or devise.
“ No forfeiture of any benefit under a will shall be occasioned by disclosure on the part of the beneficiary to any of the parties or to a court of information relating to any paper propounded as a last will; or by disclosure by such beneficiary to any party or to a court of information relevant in a proceeding for probate of such propounded paper.
“ No forfeiture of a benefit under a will shall be occasioned by refusal or failure of the beneficiary to join in a petition for the probate of a paper propounded as a will, or by refusal or failure of the beneficiary to execute a consent to or waiver of notice of such probate.
‘ ‘ An infant or incompetent party may affirmatively oppose the probate of a propounded instrument without forfeiting any benefit thereunder.” (Added by L. 1946, eh. 517, eff:. April 5, 1946.)
Mr. Mutchler filed no objections to the will and the bare contention that he failed to co-operate with the proponents or their criticism of his testimony while being examined as a witness before trial would hardly justify the court in denying bim his legacy and its payment is accordingly directed.
Seventh
The testatrix died on May 25, 1955; letters of temporary administration on her estate were issued on July 13, 1955, and letters testamentary on July 27, 1957. A question arises as to the date on which interest commenced to run on the general legacies winch the testatrix defined in terms of percentages of her estate. Although the amounts of those bequests cannot be definitely determined until the net value of the estate is finally established under the earlier ruling in this decision, the general legacies will carry interest on the amounts then fixed running from the date when they matured (Matter of Rutherfurd, 196 N. Y. 311; Matter of Stulman, 146 Misc. 861). Section 218 of the Surrogate’s Court Act and section 146 of the Decedent Estate Law provide that legacies become payable seven months subsequent to the issuance of letters testamentary or of “ letters of administration ”. It has been held in a number of cases that letters of temporary administration are embraced within the *997 phrase “ letters of administration ” as employed in both of the sections cited at least to the extent of fixing the date upon which interest commences to run on general legacies (see Matter of McGowan, 124 N. Y. 526; Matter of Engert-Coleman, 181 Misc. 504; Matter of Ernsttahl, 145 N. Y. S. 2d 110 and cf. Surrogate’s Ct. Act, § 314, subd. 5): “ The expression, ‘ letters of administration, ’ includes letters of temporary administration.” The rule for decision in this case was most clearly stated by the Court of Appeals in Matter of McGowan (supra) in construing an earlier statute (Rev. Stat. of N. Y., part II, oh. VI, tit. Ill, § 43) identical in text with those under consideration here with the exception that the period fixed was a year rather than seven months. The court said (pp. 529, 531):
“ Two questions are presented by this appeal:
1. Whether interest on a general pecuniary legacy begins to run one year after the testator’s death or one year after the grant of letters testamentary or of administration ?
2. If one year after grant of letters, does the time begin to rim from the date of granting letters of temporary administration pending probate proceedings? * * *
" The second question, whether the words ‘ granting letters testamentary or of administration ’ as used in the statute includes letters of temporary administration, we think, should be answered in the affirmative. 1. Because the legislature having used the words ‘ letters of administration ’ instead of ‘ letters of administration with the will annexed ’ must be deemed to have employed them in their broader meaning so as to include letters of temporary administration as well.”
The court accordingly holds that the legacies began to bear interest at the rate of 3% per annum (Surrogate’s Ct. Act, § 218) on February 11,1956, or seven months after the issuance of temporary letters of administration. It is further directed that the income beneficiary of the preresiduary trust is entitled to the income earned by the trust from the date of the death of the testatrix at the rate earned by the estate (Matter of Stanfield, 135 N. Y. 292; Matter of Hyatt, 81 N. Y. S. 2d 911).
Eighth
Paragraph Fourth of the will permits each of three individuals to select as a memento an item of jewelry from the collection left by the testatrix with the proviso that the selection be confined to individual pieces as distinguished from sets. Having viewed the collection and been ’aided in its deliberations by the opinions of the expert witnesses, the court holds that lots 5 -and 5A or 5% as designated in the report of the appraiser *998 constitute sets within the meaning of the will and that only the balance of the collection is available in satisfaction of the bequests.
Ninth
Subdivision (V) of paragraph Third of the will contains the following provision: “ To Jesuit Order of the Roman Catholic Church, specifically, The Church of the Atonement, located at Park Avenue and East 81st Street, New York City, a sum equivalent to one-half of one percent (% of 1%) of my estate.”
The only church located near the address designated by the testatrix is the Roman Catholic Church of St. Ignatius Loyola conducted under the auspices of the Society of Jesus. The relationship of the testatrix to that church as established on the record from sources dehors the will makes it perfectly clear that it was that church which she had in mind and that the misnomer was attributable to the error of the scrivener. Accordingly the court holds that the legacy is payable to the Jesuit Order of the Roman Catholic Church, specifically, the Church of St. Ignatius Loyola, located at Park Avenue and East 84th Street, New York City (Lefevre v. Lefevre, supra).
The objections having been withdrawn or reserved for determination on the final accounting, a decree may be submitted on notice construing the will in accordance with the foregoing and settling the account, as filed.
(Amendment, June 27, 1958.)
The formula stated in the court’s decision of June 25, 1958 with respect to question “ First ” is amended to read as follows: “ The formula to be employed for measurement of the net estate requires that there be deducted from the gross value of 'all of the assets left by the deceased a sum equal in amount to the total of the debts and expenses of administration.”
In addition to the foregoing amendment, the court grants petitioners’ request for leave to abandon certain articles of personalty referred to in schedule A of the account and their request to abandon certain records, letters, etc. as set forth in ¡schedule L of the account.