98 N.J. Super. 36 (1967)
235 A.2d 920
IN THE MATTER OF THE ESTATE OF FRANK G. THOMPSON, DECEASED.
Superior Court of New Jersey, Essex County Court, Probate Division.
Decided November 8, 1967.
*37 Mr. Philip J. Mylod argued the cause for plaintiff, Helen Lapp Thompson (Messrs. Mylod and Feinberg, attorneys).
Mr. Geoffrey Gaulkin for National Newark and Essex Bank, Executor and Trustee (Mr. Samuel R. Kirschner, attorney, Messrs. Frohling and Gaulkin of counsel).
YANCEY, J.C.C.
This is an action by plaintiff Helen Lapp Thompson, widow of the deceased Frank G. Thompson, for distribution under a will brought on an order to show cause signed October 7, 1966. Plaintiff here seeks construction of two paragraphs of the said will. Defendant is the National Newark and Essex Banking Company of Newark, which was nominated and qualified as executor and trustee *38 under said will. Thompson's will was admitted to probate by the Essex County Surrogate on June 24, 1960. Subsequently, plaintiff obtained an order to show cause why the executor should not account. Thereafter, the executor sought an allowance of its first account and construction of the paragraph Fifth of the will regarding the date of valuation of the estate for purposes of distribution to plaintiff. That paragraph provides as follows:
"Fifth: I give, devise and bequeath to my wife, HELEN LAPP THOMPSON, if she survives me, an amount equal to fifty percent of my entire estate. The within gift to my wife shall be payable twenty percent one year after my decease, twenty percent two years after my decease, twenty percent three years after my decease, twenty percent four years after my decease, and twenty percent five years after my decease."
The Essex County Court determined that Mrs. Thompson was entitled to a sum equal to 50% of the value of the estate as of the date of distribution. The executor appealed this determination and the Appellate Division of the Superior Court decided that the proper construction of this paragraph fixed the percentage payable to the widow at 50% of the entire estate, valued at the time of death without considering either appreciation or diminution of the estate between the date of death and the date of distribution. A judgment to this effect was entered on or about May 6, 1966 in the Essex County Court, Probate Division.
On June 10, 1964 the executor determined that the share distributable to Mrs. Thompson under the paragraph Fifth of the will to be $208,605.20.
Plaintiff, by this proceeding, challenges the correctness of that determination as improper and thereby seeks construction of said paragraph Fifth. She claims that under the proper interpretation of this provision she is entitled to $301,555.15, and since the executor has distributed $194,993.26 to her, she is entitled to a balance of $106,561.89 at 6% interest from the date of entry of judgment pursuant to the Appellate Division's opinion. Demand for this balance *39 was made by plaintiff on the executor by letter dated May 17, 1966.
Plaintiff also contends that paragraph Fifteenth of the will provides for payment by the trustee out of the corpus of a trust established by testator of sums expended by her for her mother's last illness. That paragraph, after giving the residuary estate to the trustee, provides in pertinent part for the following use:
"(a) To take possession of, hold, manage, invest and re-invest the same and to pay the net income therefrom to my wife, HELEN LAPP THOMPSON, during her life, in monthly installments, beginning on the first day of the month next following the date of my death; and to continue after my wife's death to pay the net income therefrom to my mother-in-law, LOUISA LAPP, during my mother-in-law's lifetime, should she survive my wife. In addition to the payment of the net income from this trust, my trustee may at any time and from time to time pay over to my wife, HELEN LAPP THOMPSON, or my mother-in-law, LOUISA LAPP, as the case may be, so much of the corpus of said trust as my trustee, in its sole discretion, may deem advisable to maintain the standard of living to which they were accustomed during my lifetime or to satisfy emergency expenses that may be incurred by them by reason of illness or otherwise."
Following this provision, the trustee is directed to pay sums to two charities and the balance to a foundation formed by the trustee and known as the "Frank G. Thompson Foundation."
From the exhibits in this case it appears that Mrs. Thompson expended $11,403.35 for her mother, Louisa Lapp, because of a circulatory condition which required medical attention from September 1962 until April 1963. On May 17, 1966 plaintiff submitted the bills for these expenses to the trustee, but the trustee has refused to honor same.
Plaintiff contends that the language contained in paragraph Fifth of the will delineates a general primary legacy amounting to a fixed dollar amount, and that costs of funeral expenses, counsel fees and administration expenses should not be deducted in computing this sum. As to the language contained in paragraph Fifteenth, she contends that it provides for the trustee's payment out of the corpus of the *40 trust for the expenses incurred for the last illness of her mother.
Defendant argues that the formula employed by the scrivener of the will gives the plaintiff one-half of the net probate estate, or the estate remaining after the deduction of funeral expenses, counsel fees and administration expenses. Further, defendant urges that paragraph Fifteenth vests the trustee with the sole discretion to allocate the corpus of the trust provided for in that paragraph as it sees fit, and unless it can be shown that the trustee acted capriciously or improperly, the court should not disturb its determination.
Finally, plaintiff claims that she is entitled to interest from the date of the last installment due under paragraph Fifth of the will, or from the date of the Appellate Division's opinion. Defendant, however, urges that since Mrs. Thompson is the life beneficiary under the residuary trust arrangement, she would in any case be liable for any interest charged for failure to pay the legacy under paragraph Fifth, and that she has in fact received exactly what she would have received had interest been accrued as she asserts.

I
The language used in paragraph Fifth of the will in question sets out a pecuniary formula clause. As such, the language employed by testator is evidentiary of his intent to give a fixed dollar amount. In re Thompson, 90 N.J. Super. 350, 354 (App. Div. 1966). The critical issue in computing the dollar amount given plaintiff is what testator meant by the words "entire estate" in the paragraph Fifth bequest. Again, reference to the Appellate Division's opinion in the earlier construction of this paragraph is instructive.
"`Entire estate' evidently referred to its gross value, without regard to diminution thereof resulting from the other provisions of the will." (at pp. 353, 354)
*41 Although the question now at issue was not before the Appellate Division in its earlier decision, that court's impression of the meaning of the words "entire estate," although dictum, is entitled to consideration. However, it should be noted that the Appellate Division did not have the benefit of a thorough briefing of the point, as this court has had.
Defendant cites Smith v. Terry, 43 N.J. Eq. 659 (E. & A. 1887), as being "of principal importance." In that case a life interest in one-sixth of "my whole estate" was granted. In interpreting that fractional bequest the court in Smith construed "my whole estate" to mean "net estate." "I think it can be said, then, that according to the popular sense the amount of a deceased person's estate is what he is worth after the payment of his debts." (at p. 666).
In In re Gardner, 35 N.J. Super. 163 (App. Div. 1955), the court, relying on Smith v. Terry, supra, held that a bequest to a widow of "one half of my entire estate" was to be determined after payment of debts and expenses.
All the cases (except one) cited by defendant deal with fractional bequests, in which the legatee is to receive a fraction or portion of the estate. Since it is possible that the fractions in which the bequests are made may add up to the total of the estate, it appears only sensible and practical that the debts and expenses be deducted first, so that the estate to be divided consists of real or net assets  rather than gross assets subject to diminution by decedent's liabilities and the estate's expenses. There is no use making a division of all the assets according to proportional or fractional bequests if some of those assets may not be there when the estate is distributed.
The case at bar is slightly different. Here "entire estate" is used as a reference by which the amount going to plaintiff is to be computed. If "entire estate" means gross estate, it is not defeating that the gross estate will not be available at distribution. If "entire estate" means gross estate, its use merely as a term of reference is not, as defendant contends, a "wholly meaningless standard." At the same time, *42 however, there is nothing to preclude "entire estate" from meaning net probate estate, as it long has in the context of fractional bequests.
One case cited by defendant deals with a pecuniary formula legacy. In re Momand's Estate, 13 Misc.2d 990, 177 N.Y.S.2d 115 (Surr. Ct. 1958), reversed on other grounds, 7 A.D.2d 280, 182 N.Y.S.2d 565 (App. Div. 1959). There the testatrix made 27 gifts to individuals and charitable institutions. The gifts were described as "a sum equivalent to [a fixed percentage] of my estate." In deciding whether "estate" meant gross or net estate the court (whether deliberately or not) did not distinguish between pecuniary formula legacies and fractional legacies. The court quoted the general rule construing estate as used in fractional legacies to mean net estate and stated:
"There is nothing to be found anywhere in this will to suggest that the testatrix entertained any notion of making these bequests in terms of percentages of the gross estate and as a consequence the court cannot concur in the proposition that that was her intention." 177 N.Y.S.2d, at p. 118.
Likewise, there is nothing in the structure or language of the will under construction here that persuades this court that "entire estate" means gross estate.
In paragraphs Sixth through Thirteenth testator bequeathed dollar gifts "out of the balance of my estate." Plaintiff points out that testator in paragraph Fifth did not bequeath the plaintiff "an amount equal to 50% of the balance of my entire estate." She suggests that if testator had intended "entire estate" to mean adjusted gross estate or net estate, the "expert scrivener" would have used "of the balance" in the paragraph Fifth also. This is possible, but it is not necessarily the only explanation for the choice of language. It is just as likely, if not more, that the scrivener did not use "of the balance" in paragraph Fifth because he wanted to make clear that the bequest to plaintiff was paramount to those in paragraphs Sixth through Thirteenth in case of abatement. It is also equally possible that *43 the scrivener did not use "of the balance" because the "entire estate" (whether it is taken to mean net or gross) had not yet been diminished by any other bequest.
Plaintiff also points out that the scrivener drafted the clause in question, "an amount equal to 50% of my entire estate," rather than "an amount equal to 50% of my adjusted gross estate," which is "the more usual way to prepare the well recognized pecuniary formula clause in estate planning." This is true. However, if the scrivener were able to distinguish between all the assets only and adjusted gross estate, he should also have been able to distinguish between adjusted gross estate and gross estate, the latter term being equally well recognized in estate planning.
In Fidelity Union Trust Co. v. Robert, 36 N.J. 561 (1962), Justice Jacobs discussed at length the outlook of the court toward the construction of wills. He noted that the judicial function in construing a will is to "ascertain and give effect to the `probable intent of the testator.'" (at p. 564). He added that "in ascertaining the subjective intent of the testator, courts will give primary emphasis to his dominant plan and purpose as they appear from the entirety of his will when read and considered in the light of the surrounding facts and circumstances. [Citations omitted]. So far as the situation fairly permits, courts will ascribe to the testator `those impulses which are common to human nature, and will construe the will so as to effectuate those impulses.'" (at p. 565).
The court also said that "the object is to ascertain `the probable intent' of the testator by a `preponderance of the evidence' and to carry it out in accordance with his wishes `even though they be imperfectly expressed * * *'" Ibid.
We have seen that the language used does not aid in determining the meaning of "entire estate." Considering the dominant plan and structure of the will, as they appear from the entirety of the will and in the light of the surrounding facts and circumstances, this court does not find any indication of testator's probable intent one way or the other  not even enough for a preponderance.
*44 Plaintiff claims the will manifests testator's concern to make paramount provision for plaintiff, consistent with estate tax saving and charitable gift giving. Even if this be so, there is no indication to what extent such paramount provision extends. Testator may have intended plaintiff to receive the maximum amount possible within the most favorable, albeit strained, interpretation of the language used, as plaintiff contends; or he may have felt that "entire estate" means assets less liabilities, that plaintiff had been amply provided for, and that to find otherwise would diminish the amount available and thwart his intent to do good works. The language used, the structure of the will, and testator's circumstances allow for either as his probable intent.
Cases over the years have consistently construed "entire estate," "whole estate," "all my estate" and "estate" to mean net rather than gross assets. Although a pecuniary bequest differs in certain aspects from a fractional bequest, those differences are not related to or affected by whether estate means net or gross. Thus, there appears no reason to vary from the long-standing interpretation of "entire estate" and kindred terms.
In addition, this will indicates an awareness of the ordinary problems of estate administration, and against this background there is no basis to depart from accepted rules of interpretation. See In re Estate of Skidell, 49 Misc.2d 147, 266 N.Y.S.2d 868, 871 (Sup. Ct. 1965).
This court therefore finds that in calculating the amount of money due plaintiff under paragraph Fifth of the will, the entire estate for this purpose shall mean the net probate estate, valued at the time of death after payment of testator's debts, funeral expenses and administration expenses.

II
In asking for interest plaintiff claims that, according to defendant's accounting, her pecuniary legacy under the will amounts to $208,605.20 computed on a net estate basis. Yet she has only received $194,993.26. This leaves $13,611.94 *45 to be paid over to her. The fifth installment of the paragraph Fifth legacy was payable to plaintiff on June 13, 1965. Written demand was made May 17, 1966, following entry of judgment May 6, 1966, on the Appellate Division's decision. Apparently defendant-executor felt that if it were successful in the earlier litigation, plaintiff's legacy would be diminished by the $13,611.94 withheld. However, after judgment of the Appellate Division was entered and plaintiff made written demand, there is no reason offered why payment could not have been made. Unless defendant offers satisfactory explanation, it is directed to pay plaintiff 3% interest on $13,611.94 from May 17, 1966. N.J.S.A. 3A:25-1. The interest payment is not to be charged against funds of testator held by defendant, but is to be surcharged against defendant personally. 6 N.J. Practice (Clapp, Wills and Administration) § 987.

III
Plaintiff's claim that the trustee under paragraph Fifteenth should invade the corpus of the residuary trust provided therein and reimburse plaintiff for expenses incurred in caring for her mother and for her mother's last illness as "emergency expenses," is unpersuasive.
The trustee, in the exercise of its "sole discretion" granted in paragraph Fifteenth, decided that such expenses should not be paid by invasion of the corpus of the residuary trust. This decision by the trustee is not such an abuse of discretion as is contemplated for judicial rectification. 6 N.J. Practice (Clapp, Wills and Administration), § 1069; In re Fiedler, 55 N.J. Super. 500 (App. Div. 1959).
Testator apparently intended that plaintiff would look after her mother as testator had done during his life and, in the event that plaintiff might predecease her mother, he made provision for his mother-in-law. However, it does not appear that he intended in the disposition of his assets that the funds in trust would continue to support his mother-in-law while plaintiff was financially capable of doing so. *46 In appraising plaintiff's financial situation and whether an "emergency" existed, defendant was not incorrect in considering plaintiff's total resources. Sibson v. First Nat. Bank and Trust Co. of Paulsboro, 64 N.J. Super. 225 (App. Div. 1960) In re Willey, 139 N.J. Eq. 118 (Prerog. Ct. 1946).