FRANCES S. CORNELL, EXECUTRIX (ESTATE OF THOMAS L. CORNELL), ET AL. *v*. FRANCES S. CORNELL, TRUSTEE (ESTATE OF THOMAS L. CORNELL), ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued October 3—decided November 6, 1973

*Robert G. Oliver,* with whom, on the brief, were *Philip N. Costello, Jr.,* and *Carolyn P. Gould,* for the appellants (named defendant et al.).

*R. William Bohonnon,* for the appellant (defendant Eleanor W. Cornell et al.).

*Robert F. Grele,* with whom were *Warren W. Eginton* and, on the brief, *Ralph A. Nichols,* for the appellees (defendant Robert W. Cornell, Executor [Estate of Edward S. Cornell, Jr.], et al.).

*Grove W. Stoddard,* for the appellees (defendant Helen C. Koenig et al.).

HOUSE, C. J.  This is an appeal from a judgment of the Superior Court construing the will of Thomas L. Cornell, hereinafter referred to as the testator.

The testator, a resident of the town of Branford, died on March 12, 1963, leaving a last will and testament dated November 22, 1961.  The will was admitted by the Probate Court for the district of Branford on April 9, 1963, on which date the plaintiffs Frances S. Cornell, Eleanor W. Cornell, Edward S. Cornell, Jr., and The Second National Bank of New Haven, hereinafter the bank, who were named as executors in the testator's will, were duly qualified as such.  The total gross estate passing under the testator's will is $2,185,447.68, subject to gains and losses during settlement of the estate. The federal estate tax, which was assessed at $585,066.10, has been paid and to date $193,503.45 has been assessed and paid toward the Connecticut succession tax.

Upon his death, the testator was survived by his widow, Frances; a sister, Eleanor; and a brother, Edward, who subsequently died on July 6, 1972.

They, together with nieces, nephews, grandnieces, grandnephews and others, as beneficiaries under the will, are named as defendants. Frances, Eleanor and the bank are also named as defendants in their fiduciary capacities as trustees under a testamentary trust created by the will. The court duly appointed a guardian ad litem to represent the interests of minor contingent beneficiaries.

Article first[1] of the testator's will created a testamentary trust, the corpus of which was comprised of "one-third in value of all of my estate, both real and personal . . . ." The income derived from the

---

[1] "ARTICLE I. I give, devise and bequeath one-third in value of all of my estate, both real and personal, wherever situated, to my wife, Frances S. Cornell, of Pine Orchard, Branford, Connecticut, my sister, Eleanor W. Cornell, of Mamaroneck, New York, and The Second National Bank of New Haven, In Trust, and upon the following uses and trusts:

"(a) To pay the net income therefrom to or for the benefit of my wife, Frances S. Cornell, so long as she shall live.

"(b) Upon the death of my wife, or upon my death if she does not survive me, to pay over and transfer all that remains of this trust to my sister, Eleanor W. Cornell, to be hers absolutely, free from any trust, or if she does not survive my wife and me, then: two-thirds to my brother, Edward S. Cornell, Jr., of Westport, Connecticut, or if he also does not survive my wife and me, to his issue who survive my wife and me, in equal shares, *per stirpes;* and one-third to my nephew, Sidney Cornell, of Wellesley, Massachusetts, provided that if my said nephew does not survive me his said one-third share shall be divided as follows: four-ninths to my niece, Helen C. Koenig (Mrs. Edward Koenig), of Westport, Connecticut, or if she also does not survive my wife and me, to her issue who survive my wife and me, in equal shares, *per stirpes;* four-ninths to my nephew, Robert W. Cornell, of Westport, Connecticut, or if he also does not survive my wife and me, to his issue who survive my wife and me, in equal shares, *per stirpes;* and one-ninth to the issue who survive my wife and me of my said nephew, Sidney Cornell, in equal shares, *per stirpes.*

"(c) I authorize the Trustees of this trust to hold, manage, invest and reinvest the trust property and collect the income therefrom as

trust was to be paid to the testator's widow, Frances, for life, and, upon her death, the remainder of the trust was to be paid to the testator's sister, Eleanor. Frances and Eleanor are both living at this time. If Eleanor should predecease Frances, then two-thirds of the trust remainder is to be paid to the issue of the now-deceased brother, Edward, who survive Frances, and one-third to Sidney Cornell, the testator's nephew.

Article second[2] bequeathed tangible personal property to the testator's brother, Edward. Article third[3] devised and bequeathed certain realty and tangible personal property to the testator's sister, Eleanor. The presently relevant portion of article

---

to them in their direction shall seem best, except as herein otherwise directed, and I give to the Trustees full power to sell, mortgage, lease and convey any real and personal property that may at any time form a part of the trust upon such terms and conditions as to them shall seem advisable. I further authorize and empower the Trustees of this trust, to make, execute and deliver any and all such instruments of conveyance, transfer, exchange, assignment or otherwise as to them may seem necessary or proper to effect any of the purposes of this instrument. I authorize the Trustees to carry any of the assets of the trust in the name of a nominee.

"(d) No property of any kind which is hereafter specifically bequeathed or devised shall be assigned to this trust by my Executors."

[2] "ARTICLE II. I give and bequeath all of my wearing apparel, jewelry and similar intimate personal effects to my brother, Edward S. Cornell, Jr., if he survives me."

[3] "ARTICLE III. I give, devise and bequeath all of the interest that I shall have at the time of my death in the real estate where I now live on Damascus Road, Pine Orchard, Branford, Connecticut, together with all of the household furniture and furnishings that belong to me at the time of my death and any automobile or automobiles that I may own at the time of my death, to my sister, Eleanor W. Cornell, to be hers absolutely."

sixth[4] left to Eleanor the residue of the testator's estate. Article fourth made eleven cash bequests which totaled $301,000.

Article fifth[5] directed that all estate, succession, inheritance and transfer taxes on the gifts in article second through article sixth be paid out of the "residuary estate as an expense of the settlement of my estate."

As to the primary issues pressed on this appeal, the court concluded that the language "one-third in value of all of my estate, both real and personal, wherever situated," meant one-third in value of the testator's gross estate, as reduced in value by the amount of debts, funeral and administration expenses, executors' and attorneys' fees (other than as taxed in this action), and widow's allowance, but without reduction by the value of the gifts under article second, article third, and article fourth of the

---

[4] "ARTICLE VI. I give, devise and bequeath all of the rest, residue and remainder of my estate, both real and personal, wherever situated, to my sister, Eleanor W. Cornell, to be hers absolutely.

. . . . .

"If my sister, does not survive me, I give, devise and bequeath all of said rest, residue and remainder of my estate as follows: two-thirds to my brother, Edward S. Cornell, Jr., or if he does not survive me to his issue who survive me, in equal shares, *per stirpes;* and one-third to my nephew, Sidney Cornell, or if he does not survive me, four-ninths of said one-third to my niece, Helen C. Koenig, or if she does not survive me to her issue who survive me, in equal shares, *per stirpes;* four-ninths of said one-third to my nephew, Robert W Cornell, or if he does not survive me to his issue who survive me, in equal shares, *per stirpes;* and one-ninth of said one-third to the issue who survive me of my said nephew, Sidney Cornell, in equal shares, *per stirpes.*"

[5] "ARTICLE V. I direct that all estate, succession, inheritance and transfer taxes, on the gifts by Article II through VI hereof (together with any interest and penalties thereon), be paid out of my residuary estate as an expense of the settlement of my estate."

will, and that the gift under article first of the will must assume its share of federal and state death taxes. It also concluded that under the provisions of article fifth of the will all gifts, devises, legacies and bequests made under article second, article third, and article fourth of the will should not be diminished on account of any death, estate, succession, inheritance or transfer taxes. The court also ordered the payment of specified counsel fees and expenses that were to be paid out of the estate to be chargeable one-third against the trust under article first of the will and two-thirds against the residuary estate passing under article sixth of the will.

By specific assignments of error, the correctness of the court's two primary conclusions are at issue on this appeal and, ancillary thereto, two evidentiary issues. Other issues raised at the trial have been settled by stipulation or are not briefed and are, therefore, abandoned. *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576.

We first consider the court's interpretation of the trust-creating language of article first: "I give, devise and bequeath one-third in value of all of my estate, both real and personal, wherever situated." The widow, Frances, as the life-income beneficiary of the trust corpus, and the issue of the now-deceased brother, Edward, whose contingent remainder in the trust corpus will vest should Eleanor predecease Frances, dispute and assign as error the finding of the trial court that "one-third in value of all of my estate" meant one-third of the estate diminished not only by the federal estate and Connecticut succession tax but also by its share of the debts, widow's allowance, executors' and attorneys' fees, funeral and administration expenses. Frances,

as the life-income beneficiary and as trustee, and the bank, as trustee, concede only that the gift in trust under article first must bear its share of all estate, inheritance and succession taxes. Eleanor, as the sole residuary beneficiary of the testator's estate, supports the finding of the trial court, whose interpretation of the testator's article first language is premised on the finding that it is ambiguous.

The language of article first and of the remaining paragraphs in the instrument is indistinct with regard to whether the article first fractional bequest in trust is a gross figure or a net figure computed after subtracting a share of debts and death expenses. Article first is susceptible to a duplicity of meaning, and it is ambiguous. A court may properly admit extrinsic evidence as an aid in removing doubts, in finding the testator's true intention and in "explaining any language whose meaning the testator has left uncertain." *Ministers Benefit Board* v. *Meriden Trust Co.*, 139 Conn. 435, 444, 94 A.2d 917; *Hoenig* v. *Lubetkin*, 137 Conn. 516, 519, 79 A.2d 278; *Thompson* v. *Betts*, 74 Conn. 576, 579, 51 A. 564. For this purpose, the trial court admitted into evidence a letter[6] written by the testator to his sister, Eleanor, shortly before the will was executed. The letter was offered by the testator's sister and accepted by the court as evincing an intent on his part that his wife's "one-third" was to be "By law" and was the equivalent of the statutory share under § 46-12 of the General Statutes.

---

[6] The pertinent portion of the letter stated: "I am having my will redrawn & am now leaving the house and all of the furnishings to you, *not* for her use. I am leaving one-third of my estate in trust, she to have the income from same for her life & then the principal to you. You will get more besides." The words "By law" were written in the left hand margin of the letter adjacent to the paragraph beginning "I am leaving one-third."

Section 46-12 provides for the life use of one-third of a decedent's estate "after the payment of all debts and charges against the estate" for a surviving spouse who elects to take against the will; if the decedent died intestate, the least the surviving spouse can take is one-third absolutely.[7] Other jurisdictions are divided as to whether the words "By law" in a will evince an intent that a surviving spouse would take a statutory share or the intestate share. Note, 17 A.L.R.2d 7, 147.

Even the use of the testator's letter and the taking of his reference to "By law" to refer to the provisions of § 46-12 of the General Statutes do not clarify the ambiguity of the language of the will. In fact, they only lead to further uncertainty. The testator clearly paraphrased the language of § 46-12 in leaving "one-third in value of all" his estate to the trust, but he did not include or paraphrase the subsequent language of § 46-12 "after the payment of all debts and charges against the estate." We cannot find that the use of the extrinsic evidence, although properly admitted, removes the basic ambiguity inherent in the language used by the testator.

We cannot adopt an interpretation or reconstruct a will, but only construe the instrument as it was written. *DiSesa* v. *Hickey,* 160 Conn. 250, 265, 278 A.2d 785; *Smuda* v. *Smuda,* 153 Conn. 430, 432, 217 A.2d 59; *Bridgeport-City Trust Co.* v. *Buchtenkirk,* 143 Conn. 531, 542, 124 A.2d 231. "[T]he law demands that the court shall be satisfied that the will in question, with the circumstances lawfully

[7] For provisions applicable to estates of those dying on or after January 1, 1974, see Public Acts 1973, No. 73-36.

proven, does in fact disclose the actual intent of the testator." *DiSesa* v. *Hickey,* supra, 266. Where the court "can only venture an unsatisfactory guess at what possibly the testator might have wished to express . . . [we] . . . must . . . hold the clause which contains no clearer meaning void for uncertainty." Ibid.

In the *DiSesa* case the court was confronted with the problem of what the testator meant by his use of the term "gross inventory," which, we noted, is a term "not used in our General Statutes or case law," also noting that "[i]t does not appear that the trial court was able to find any guiding precedent and neither have we." *DiSesa* v. *Hickey,* supra, 265. The situation here is unlike that in the *DiSesa* case. It is settled law that absent a specific direction to the contrary, where a will leaves a designated beneficiary a specified percentage or proportion of the testator's estate, the expenses of administering the estate and the debts and charges against it are deducted from the gross estate in order to determine the base from which the percentage bequest is computed. *Blakeslee* v. *Pardee,* 76 Conn. 263, 267, 56 A. 503; *Bell* v. *Raymond,* 20 Conn. 337, 341; *In re Estate of West,* 203 Kan. 404, 454 P.2d 462; *St. Louis Union Trust Co.* v. *Krueger,* 377 S.W.2d 303, 305 (Mo.); *In re Estate of Frank G. Thompson,* 98 N.J. Super. 36, 235 A.2d 920; *Matter of Momand,* 13 Misc. 2d 990, 177 N.Y.S.2d 115, rev'd on other grounds, 7 App. Div. 2d 280, 182 N.Y.S.2d 565; 4 Page, Wills (Bowe-Parker Rev.) § 33.3; 57 Am. Jur., Wills, § 1191; 96 C.J.S., Wills, § 791; note, 169 A.L.R. 903; see also *Willcox* v. *Beecher,* 27 Conn. 134; *Estate of Kirby,* 199 Cal. 135, 248 P. 517; *Wells* v. *Menn,* 158 Fla. 228, 28 So. 2d 881; *Aronson* v. *Congregation Temple De Hirsch,* 138

So. 2d 69, 72 (Fla. App.); *Stoner* v. *Custer,* 252 Ind. 661, 251 N.E.2d 668; *Baylor* v. *National Bank of Commerce,* 194 Va. 1, 72 S.E.2d 282; note, 169 A.L.R. 892.

In *Blakeslee* v. *Pardee,* supra, the testator bequeathed to his wife a general legacy of "two thirds of all the personal property of whatever kind of which I may die possessed." The question was whether the wife's bequest was two-thirds of the amount remaining after the satisfaction of debts, death expenses, and legacies. The court concluded (pp. 267–68): "[W]e think that she is entitled to two thirds of the net personal estate; that is, two thirds of the personal estate less the amount of claims presented and allowed and the expenses of settlement. A gift 'of all of which one may die possessed' carries only the net amount of the estate. In like manner a gift of two thirds carries two thirds of the same total. . . . The latter [debts and expenses] are a charge upon the property left by the deceased, and until their amount is ascertained the amount of the estate for the purposes of division cannot be determined."

In the light of this decision, which has been the settled law in this state for seventy years, and in the absence of any contrary provision in the will, we conclude that because the bequest in question was a gift of a fractional one-third of the value of the testator's estate, that amount is to be computed only after deduction of the debts and administration expenses, and there was no error in the conclusion reached by the trial court on this issue.

The second question presented on this appeal is whether the language used in article fifth of the testator's will was sufficient to overcome the statu-

tory presumption that federal estate and state succession taxes are to be prorated among the beneficiaries. Article fifth stated: "I direct that all estate, succession, inheritance and transfer taxes, on the gifts by Article II through VI hereof . . . be paid out of my residuary estate as an expense of the settlement of my estate." Section 12-376 of the General Statutes provides that the Connecticut succession tax is to be paid by the recipient of a bequest. It states, inter alia: "Except as provided by the provisions of a will, such tax shall be paid from property passing to the donee, beneficiary or distributee unless such recipient pays to the fiduciary the amount thereof."

Similarly, § 12-401 of the General Statutes provides that state and federal estate taxes "except when a testator otherwise directs in his will . . . shall . . . be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues. . . ."

The trial court properly read article fifth in conjunction with §§ 12-376 and 12-401 of the General Statutes and concluded that the testator's intent was that the gifts, devises, legacies and bequests in article second, article third, article fourth and article sixth should not bear any proportionate diminution for death taxes. The trial court, having found article fifth unambiguous, properly rejected an offer of extrinsic evidence by the sister, Eleanor, which consisted of three prior wills of the testator. The prior wills each contained clauses which were purportedly more specific directions[8] against the prora-

---

[8] The tax clause of each of the prior wills provided: "First, I direct that all transfer, succession, inheritance and estate taxes, both Federal and State, assessed with respect to any property included

tion of taxes than the terminology used in article fifth. It is her claim that since the testator indicated in the earlier wills that he knew how to prevent proration, his failure to use the same language indicated his intention in the present will not to prorate.

The precise issue is not one of resolving an ambiguity in gleaning the testator's intent whether or not to prorate, for in article fifth, the testator addressed himself to that very matter, and "the paragraph must be read in the light of that fact." *Sherman* v. *Moore,* 89 Conn. 190, 194–95, 93 A. 241. The question more accurately is one of the sufficiency of article fifth in vitiating the dictates of §§ 12-376 and 12-401 of the General Statutes; in case of doubt as to the meaning, the tax burden will be left where the law places it. *McLaughlin* v. *Green,* 136 Conn. 138, 145, 69 A.2d 289; note, 37 A.L.R.2d 7, 13 § 1. " 'Courts cannot speculate concerning the intention of settlors and testators as to where they intend the burden of taxes to rest. The instrument as written must govern. Opportunity is freely open in framing trust deeds and wills to make full and accurate expression of desire and intention respecting the payment of taxes and the particular beneficiaries whose shares shall be exonerated from or bear that pecuniary exaction for the support of government. . . . In the absence of a definite declaration on the subject it must be presumed that the intention was that the ultimate weight of taxation must rest where the law places it. It cannot be presumed that anything else was intended than what is stated in the written instrument.' " *McLaughlin* v. *Green,* supra, quoting from *Bemis* v. *Converse,*

in my estate for tax purposes, shall be paid by my executors out of the principal of my estate in the same manner as the usual expenses of administration and shall not be prorated or apportioned."

246 Mass. 131, 134, 140 N.E. 686; accord, *Sherman v. Moore,* supra; *Jerome v. Jerome,* 139 Conn. 285, 291, 93 A.2d 139; *Starr v. Watrous,* 116 Conn. 448, 451, 165 A. 459.

"A good tax clause should expressly state (1) what gifts or beneficiaries are freed of the burden of taxes, (2) what taxes are affected, and (3) where the burden of taxes is shifted. While a tax clause may be effective even if it does not expressly cover these three elements, the use of a vague clause invites a lawsuit." Note, 37 A.L.R.2d 7, 13–14 § 1; see *Starr v. Watrous,* supra. A testator's provision that all his taxes be paid out of the residue of his estate will suffice. *McLaughlin v. Green,* supra, 146.

Article fifth meets these requirements. It specifies that the gifts in article second through article sixth be exempt. It delineates "all estate, succession, inheritance and transfer taxes" as the taxes intended, and it allocates the burden of taxes to the residuary estate. While nonspecificity as to one or more of these elements has resulted in the property in question being diminished by a pro rata share of the estate and succession taxes in such cases as *Sherman v. Moore,* supra; *Morgan Guaranty Trust Co. v. Huntington,* 149 Conn. 331, 179 A.2d 604; *Guaranty Trust Co. v. New York City Cancer Committee,* 145 Conn. 542, 144 A.2d 535; *New York Trust Co. v. Doubleday,* 144 Conn. 134, 128 A.2d 192; *McLaughlin v. Green,* supra; we find that the language of article fifth was a sufficient direction against the proration of taxes which are to be charged against the residuary estate.

There is no error.

In this opinion the other judges concurred.