ELIZABETH BUNTING ET AL. *v.* PETER G. BUNTING,
EXECUTOR (ESTATE OF JAMES E. BUNTING)
(AC 19378)

Lavery, C. J., and Foti and Pellegrino, Js.

666

Argued May 2—officially released November 14, 2000

*Walter A. DeAndrade,* for the appellant-appellee (defendant).

*Donald C. Lunt,* for the appellees-appellants (plaintiffs).

*Opinion*

LAVERY, C. J. The defendant, Peter Bunting, executor of the estate of James E. Bunting, appeals from the judgment of the trial court ordering a proration of the tax burden of the estate of James Bunting in accordance

with General Statutes § 12-401 and affirming, in part, the decisions of the Probate Court. The plaintiffs[1] cross-appealed. On appeal, the defendant claims that the trial court improperly (1) permitted the introduction of evidence of the decedent's intent as to the payment of federal estate and state succession taxes and (2) ordered the Probate Court to effect distribution of the estate after a proration of taxes. On their cross appeal, the plaintiffs claim that the trial court improperly (1) refused to include in the probate estate bank accounts transferred by the decedent into joint ownership with the defendant and (2) refused to order the defendant to transfer to the estate shares of stock from the Tompkins County Trust Company (Tompkins Trust) that he received from the estate for distribution to the residual legatees in the will. We affirm the judgment of the trial court in part and reverse it in part.

The following facts and procedural history are relevant to this appeal. The defendant is the son of James Bunting, the decedent. The plaintiffs Mansfield Lyon and Daniel Lyon are children of the decedent's wife from a prior marriage. The plaintiff Elizabeth Bunting is the defendant's sister. The defendant is the executor of the decedent's estate. In 1988, the decedent's wife died, bequeathing her entire estate, including an interest in the Adaleen M. Winton Trust, to her husband.

The decedent created and operated a business named Bunting & Lyon, Inc. On August 31, 1988, the decedent transferred to the defendant, as a gift, all of the outstanding stock of Bunting & Lyon, Inc. (Bunting & Lyon stock), that previously had been held by the decedent and the building in which the business operated. No gift tax was paid at that time.

---

[1] The plaintiffs, the beneficiaries of the residuary estate under the will of James E. Bunting, are Elizabeth Bunting, Mansfield A. Lyon and Daniel W. Lyon, the daughter and stepchildren, respectively, of the decedent.

On October 30, 1989, the decedent executed a new will that was drafted by his attorney. Article I of that will provided in relevant part: "I direct that any estate, succession, inheritance, death or transfer tax arising by reason of or in any way in connection with my death, be paid out of my estate as an expense of administration thereof, without apportionment or contribution." The will also provided that, after certain specific bequests, the residue of the decedent's estate, including his interest in the Winton trust, be distributed to the defendant and the plaintiffs, per stirpes.

In 1991, the decedent moved into a retirement community and began transferring securities and bank accounts that he owned into joint ownership with the defendant. Following the decedent's death in 1994, the estate was subject to a federal estate tax of approximately $370,000, and a state succession tax of approximately $90,000. The inventory of the estate, however, amounted to only $400,000, before deducting other estate expenses.[2] The defendant used all of the assets of the estate and approximately $100,000 of his personal funds to pay the taxes, leaving nothing for distribution to the residual beneficiaries.

The plaintiffs objected to the final account filed by the defendant with the Probate Court. The plaintiffs claimed that the defendant improperly charged the estate with federal taxes attributable to the inter vivos gifts and failed to recover and include as assets of the estate bank accounts owned by the decedent jointly with the defendant. On September 30, 1997, the Probate Court overruled these objections, and the plaintiffs appealed to the Superior Court. Thereafter, the defen-

---

[2] Ordinarily, an estate of this size would not be subject to federal estate taxation. Because no gift tax was paid on the prior gift to the defendant of the Bunting & Lyon stock and the building, however, the tax applicable to that gift utilized a substantial portion of the unified estate and gift tax credit, thus exposing the estate to taxation.

dant filed an amended final account, to which the plaintiffs also objected. After the Probate Court approved the amended final account, the plaintiffs appealed to the Superior Court. The appeals were consolidated and tried together as a single appeal from probate.

On February 22, 1999, the trial court issued its memorandum of decision, holding that (1) Article I of the will did not use language sufficient to overcome the statutory presumption in favor of proration, (2) the joint accounts created by the decedent with the defendant prior to the death of the decedent should not be returned to the estate and (3) the Tompkins Trust stock that the defendant transferred from the estate to himself should not be returned to the estate. Accordingly, the court remanded the matter to the Probate Court for a distribution with the tax burden prorated and dismissed the other grounds of appeal. This appeal and cross appeal followed.

I

The defendant first claims that the trial court improperly applied the law in ascertaining the decedent's intent as to the payment of death taxes. Specifically, the defendant claims that the trial court improperly (1) admitted parol and extrinsic evidence of the decedent's intent as to the payment of death taxes and (2) used a "whole will" and "surrounding circumstances" approach in determining the decedent's intent when the will was clear and unambiguous. The defendant contends that the court, accordingly, improperly concluded that the language of the will was insufficient to overcome the presumption in favor of the proration of death taxes. We address each of these contentions in turn.

A

The defendant claims that the court improperly admitted parol and extrinsic evidence as to the dece-

dent's intent concerning the payment of death taxes. We disagree.

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Citations omitted; internal quotation marks omitted.) *State* v. *Zollo*, 36 Conn. App. 718, 723, 654 A.2d 359, cert. denied, 234 Conn. 906, 660 A.2d 859 (1995).

Our Supreme Court has stated that it is "the cardinal rule in the settlement of estates that where possible the testator's expressed intention should be carried out . . . ." *Waterbury National Bank* v. *Waterbury National Bank*, 162 Conn. 129, 135, 291 A.2d 737 (1972). In interpreting the testator's intent, "[w]e admit parol evidence of the meaning of the testator in the use of some term or word in a will when the meaning is equivocal or ambiguous." *Stearns* v. *Stearns*, 103 Conn. 213, 221, 130 A. 112 (1925). "A court [however,] may not stray beyond the four corners of the will where the terms of the will are clear and unambiguous." (Internal quotation marks omitted.) *Canaan National Bank* v. *Peters*, 217 Conn. 330, 337, 586 A.2d 562 (1991).

The decedent's will provided that all estate and succession taxes should be treated as expenses of administering the decedent's estate and should not be apportioned among the legatees. The question is whether this provision is ambiguous. The language used is not ambiguous. An evaluation of Article I of the will in light of prior and subsequent events, however, casts some doubt on what the decedent meant.

"The concept of latent ambiguity has been described as follows: A latent ambiguity arises from extraneous or collateral facts which make the meaning of a written instrument uncertain although the language thereof be clear and unambiguous. The usual instance of a latent ambiguity is one in which a writing refers to a particular person or thing and is thus apparently clear on its face, but upon application to external objects is found to fit two or more of them equally. . . . In Connecticut, the vast majority of cases considering a claim of latent ambiguity have arisen in three limited contexts . . . (2) interpretation of wills or trusts . . . ." (Citations omitted; internal quotation marks omitted.) *Heyman Associates No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 782, 653 A.2d 122 (1995). "Where there is a latent ambiguity in a will . . . as to . . . the subject of a bequest, extrinsic evidence . . . is taken to remove the ambiguity." *Beardsley* v. *Merry*, 136 Conn. 573, 576, 72 A.2d 829 (1950).

Prior to the execution of his will, the decedent transferred stock and property valued at $467,000 to the defendant.[3] Although a gift tax return was filed, in which over two thirds of the decedent's unified estate and gift tax credit was used to avoid payment of tax on the gift at that time, testimony at trial indicated that, at the time of the gift, the decedent's attorney did not believe that the gift was taxable. Accordingly, there was no discussion concerning how taxes on the decedent's estate would be allocated in view of this rather large gift.

Thus, the evidence indicates that at the time the will was drafted, no one participating in that process envisioned the need to deal with this substantial gift when drafting the tax clause in Article I of the will. These facts create a latent ambiguity. The will provided that

---

[3] This amount was reported both on the gift tax return filed in 1988 and on the estate tax return of the decedent.

all estate and succession taxes were to be paid out of the estate as expenses of administration without apportionment or contribution. The language used, as in *Heyman Associates No. 1,* is clear on its face, but, when applied to the external objects referred to, has two possible meanings. The phrase "any estate, succession, inheritance, death or transfer tax arising by reason of or in any way in connection with my death," could include the taxes related to the prior gift to the defendant, or it could not include those taxes. We do not know whether or how the decedent would have arranged his will differently with respect to estate taxes had he known that the substantial gift he made while alive would be part of the gross estate to be taxed.

Having discovered this latent ambiguity, the trial court utilized parol and extrinsic evidence to determine whether, when the will was drafted, the decedent or his attorney considered the effect of the prior gift of the building and stock on the calculation of the estate taxes at the time of his death. At trial, the attorney who drafted the will testified concerning his actions in drafting the decedent's will and stated that he did not consider the gift to be substantial and did not believe that it was a taxable gift.

Our Supreme Court has previously held that it is appropriate to consider events outside of the execution of the will to resolve a latent ambiguity therein. "[T]o determine whether the testator intended to include his adopted grandchildren under the terms of his will, it was necessary to examine events occurring after the execution of the testator's will. Such circumstances . . . are properly scrutinized where, as in this case, the information is necessary to resolve a *latent ambiguity* arising from the execution of a will . . . ." (Emphasis added.) *Connecticut National Bank & Trust Co.* v. *Chadwick,* 217 Conn. 260, 269–70, 585 A.2d 1189 (1991).

In view of this latent ambiguity as to the decedent's intent with respect to Article I of the will, we conclude that the trial court did not abuse its discretion or commit clear error when it permitted the introduction of parol or extrinsic evidence to aid it in determining the decedent's intent as to the allocation of death taxes.

### B

The defendant next claims that the court improperly used a "whole will" and "surrounding circumstances" approach in determining the decedent's intent when the will was clear and unambiguous. We disagree.

"[T]he issue of the testator's intent presents a question of law . . . ." Id., 266. "The construction of a will presents a question of law to be determined in the light of facts which are found by the trial court . . . . *Spurr's Appeal,* 116 Conn. 108, 111, 163 A. 608 (1933). . . . An erroneous conclusion is an error of law and not an error in an inference of fact." (Citations omitted; internal quotation marks omitted.) *Connecticut National Bank & Trust Co.* v. *Chadwick,* supra, 217 Conn. 266. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct . . . ." (Internal quotation marks omitted.) *Issler* v. *Issler,* 250 Conn. 226, 236, 737 A.2d 383 (1999); see also *Gateway Co.* v. *DiNoia,* 232 Conn. 223, 229, 654 A.2d 342 (1995); *Morton Buildings, Inc.* v. *Bannon,* 222 Conn. 49, 53, 607 A.2d 424 (1992).

Our Supreme Court has stated: "We look to the will *as an entirety* and examine the particular words and language used *in the light of the circumstances under which they were written.*" (Emphasis added.) *Union & New Haven Trust Co.* v. *Sullivan,* 142 Conn. 685, 691,

116 A.2d 908 (1955). As noted previously, it is the testator's intent that is the touchstone of will interpretation. See *Waterbury National Bank* v. *Waterbury National Bank*, supra, 162 Conn. 135.

The defendant is correct in his contention that the words "without apportionment or contribution," as used in the will, are clear and unambiguous. The issue, however, is whether those words applied only to the decedent's estate as it existed at the time he drafted his will or whether they also included the prior gift of the Bunting & Lyon stock and the building. As stated previously, the evidence at trial clearly indicated that the attorney who drafted the will believed that the gift was not taxable, and therefore the question of how taxes relative to that gift should be apportioned was never considered by the decedent. Accordingly, the will is ambiguous, indeed silent, on the question of what gifts the phrase "without apportionment or contribution" encompassed in its directive.[4]

We cannot say that the court acted improperly in utilizing the will as an entirety and in looking to the surrounding circumstances in interpreting the will. We thus conclude that the court did not employ an improper approach to ascertain the decedent's intent.

II

The defendant next claims that the trial court improperly ordered the Probate Court to distribute the decedent's estate after proration of taxes despite the

[4] The defendant's contention in this regard is based on his belief that the trial court erred in determining that the will, and specifically the tax clause, was ambiguous. We have addressed and rejected this contention in part I A of this opinion and concluded that the court did not abuse its discretion or commit clear error when it concluded that the will was in fact ambiguous.

decedent's will provision ordering otherwise. We agree in part and disagree in part.

Connecticut law provides for a "statutory presumption that federal estate and state succession taxes are to be prorated among the beneficiaries." *Cornell* v. *Cornell*, 165 Conn. 376, 385–86, 334 A.2d 888 (1973). A person's estate for tax purposes may include more property than just that which he owned at the time of death. The Internal Revenue Code (code), which includes the provisions governing the federal estate tax, provides in relevant part that "[t]he value of the gross estate of the decedent shall be determined by including . . . the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." 26 U.S.C. § 2031 (a). The code further provides that the sections setting forth the property and property interests that are included in a decedent's gross estate "shall apply to the transfers . . . [set forth in those sections] *whenever made*, created, arising, existing, exercised, or relinquished." (Emphasis added.) 26 U.S.C. § 2045. The code thus expressly provides that property included in a person's gross estate includes property that person once owned but gave away. Because there also is a federal gift tax, the possible double taxation set up by this section is offset by another section, which provides in relevant part: "If a tax on a gift has been paid . . . and thereafter on the death of the donor any amount in respect of such gift is required to be included in the value of the gross estate of the decedent for purposes of [the federal estate tax], then there shall be credited against the [estate tax] the amount of the tax paid on the gift . . . ." 26 U.S.C. § 2012 (a). Applying these provisions to the facts in this case, we conclude that because no gift tax was paid when the decedent made the gift to the defendant, the gift of the Bunting & Lyon stock and the building was part of the decedent's gross estate.

General Statutes §§ 12-376[5] and 12-401,[6] the relevant statutes addressing the proration of succession and estate taxes, respectively, both require that taxes be prorated unless the testator directs otherwise. Both our Supreme Court and the United States District Court for the District of Connecticut have held that those provisions create a statutory presumption that taxes shall be prorated. See *Mosher* v. *United States*, 390 F. Sup. 1041, 1042–43 (D. Conn. 1975) ("[u]nder the statute . . . the failure of a provision in a will to speak on taxes creates a presumption that federal and state succession taxes are to be prorated among all the beneficiaries"); *Cornell* v. *Cornell*, supra, 165 Conn. 385–86 ("statutory presumption that federal estate and state succession taxes are to be prorated among the beneficiaries").

The trial court stated that "[a] testamentary directive against proration must be clear and unambiguous." This statement is no more than a summary of what our Supreme Court has said in the many cases in which it

---

[5] General Statutes § 12-376 provides, with respect to the succession tax, in relevant part: "Except as provided by the provisions of a will, such tax shall be paid from property passing to the donee, beneficiary or distributee unless such recipient pays to the fiduciary or transferee the amount thereof. Each donee, beneficiary or distributee of the same class shall pay such percentage of the tax on property passing to such class as his share is of such property. . . ."

[6] General Statutes § 12-401 (a) provides, with respect to the estate tax, in relevant part: "When it appears from any administration account or in any appropriate proceeding in the Probate Court that an executor . . . has paid a death tax levied or assessed under the provisions of chapter 217, hereinafter called the Connecticut estate tax, or under the provisions of the . . . federal estate tax, upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, except when a testator otherwise directs in his will . . . shall . . . be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues. Such proration shall be made in the proportion, as near as may be, that the value of the property, interest or benefit of each such person bears to the total value of the property, interests and benefits received by all such persons interested in the estate . . . ."

has considered various directives against proration in wills. Clauses directing the mechanism for the payment of taxes that are less specific than the one at issue here have been upheld by our Supreme Court. For example, in *Cornell* v. *Cornell*, supra, 165 Conn. 376, our Supreme Court found that a will direction stating, "I direct that all estate, succession, inheritance and transfer taxes [on the specific bequests in the will] (together with any interest and penalties thereon), be paid out of my residuary estate as an expense of the settlement of my estate"; id., 380 n.5; was a sufficient direction against proration. Id., 386.

The relevant clause here is even more specific and includes the phrase "without apportionment or contribution," which the clause in *Cornell* lacked. If the less specific phrase has been held to be sufficient, it would make little sense to hold that the more specific one is not. Accordingly, we conclude that the language used by the decedent was sufficient to satisfy the requirements of the statute that there be an unambiguous expression of an intent that taxes not be apportioned or prorated.

While we accept the defendant's claim that the language of the will sufficiently expressed an intention to avoid the statutory requirement of proration, we do not agree with the defendant's contention that this intention applies to the prior gift to him. The uncontradicted evidence at trial was that neither the decedent nor his attorney believed there to be any tax consequences of that gift. The decedent and his attorney could not have intended that an anti-proration clause apply to the taxes on that gift, which they believed to be nonexistent. Because the intentions of the testator govern; *Waterbury National Bank* v. *Waterbury National Bank*, supra, 162 Conn. 135; we conclude that the direction in the will against proration, while valid, applies only to the property owned by the decedent at the time of

the execution of the will and thereafter, and not to the gift of the Bunting & Lyon stock and the building.

Accordingly, we reverse the trial court's finding that the language of Article I of the decedent's will was not a sufficient direction against proration. We find, however, that while the will provision was a sufficient direction against proration, it did not apply to the prior gift that was thought not to be taxable. We therefore reverse the court's decision ordering a proration of taxes with respect to all of the decedent's taxable estate other than the gift to the defendant of the Bunting & Lyon stock and the building, affirm the order of proration as to that gift alone and remand the matter to the Probate Court for administration in accordance with this determination.

### III

On their cross appeal, the plaintiffs first claim that the trial court improperly excluded from the decedent's estate money transferred by the decedent into joint accounts with the defendant. We disagree.

The court found that the plaintiffs failed to overcome the statutory presumption, by clear and convincing evidence, that the creation of a joint account was intended to be a gift to the survivor. In reaching this conclusion, the court made a factual finding that the other joint account holder, the defendant, was not a fiduciary or in a confidential relationship with the decedent.

"The standard of review this court applies to factual issues is the clearly erroneous standard." *Inversiones Lituanes, S.A.* v. *E.P. Co.*, 57 Conn. App. 369, 370, 748 A.2d 375 (2000). "A reviewing authority may not substitute its findings for those of the trier of the facts." (Internal quotation marks omitted.) *Post Road Iron Works, Inc.* v. *Lexington Development Group, Inc.*, 54 Conn. App. 534, 540, 736 A.2d 923 (1999). "The factual

findings of a trial court on any issue are reversible only if they are clearly erroneous. . . . This court cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Farrell* v. *Farrell*, 36 Conn. App. 305, 309, 650 A.2d 608 (1994).

Joint accounts in Connecticut are governed by General Statutes § 36a-290 (b).[7] This statute creates a presumption, rebuttable only by clear and convincing evidence, that the creation of a joint account is evidence of the intent of the person creating the account to have the proceeds go, upon his or her death, to the other joint account holder.

In *Cooper* v. *Cavallaro*, 2 Conn. App. 622, 481 A.2d 101 (1984), this court considered a factual situation very similar to the one in the present case. In *Cooper*, as in this case, the decedent had bank accounts in joint name with her son, who was also the executor of her estate. Id., 624–25. As in this case, the claim made by the plaintiffs in *Cooper*, the residual beneficiaries in the will, was that a confidential relationship existed between the testatrix and the executor. Id., 625. Because of this confidential relationship, the plaintiffs in *Cooper* claimed that they did not have to prove the existence of fraud or undue influence, but instead that the defendant had to prove that the transfers were valid

---

[7] General Statutes § 36a-290 (b) provides in relevant part: "The establishment of a deposit account . . . which is a joint account . . . is, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, prima facie evidence of the intention of all of the named owners thereof to vest title to such account, including all subsequent deposits and additions made thereto, in such survivor or survivors . . . ."

inter vivos gifts. Id. In *Cooper*, this court rejected the plaintiffs' claims that there was a confidential or fiduciary relationship between the mother and her son; id., 626; and that the statute creating the presumption of an inter vivos gift was unconstitutional. Id., 627.

For the reasons stated in *Cooper*, we reject the plaintiffs' claim here. "The relationship between a parent and a child does not per se give rise to the establishment of a fiduciary relationship. . . . If, however, a confidential relationship is proved, then the burden of proving fair dealing or the burden of showing the absence of undue influence shifts to the defendant or the fiduciary, and that burden must be sustained by clear and convincing evidence. . . . Since such a fiduciary relationship was not established, the burden of proof . . . remained with the plaintiffs. . . . The plaintiffs were required to prove by clear and convincing evidence that the bank accounts . . . were not valid inter vivos gifts . . . or that they were assets acquired by the defendant under circumstances which required equity to divest him of his beneficial interest and to convert him into a trustee in order to prevent his unjust enrichment." (Citations omitted.) Id., 626.

The court's conclusion in *Cooper* on this point is applicable to this case as well. "The intent of the legislature in enacting General Statutes § 36-3 [the predecessor to General Statutes § 36a-290] was to make the existence of a joint bank account prima facie evidence of ownership by the survivor which can only be rebutted by clear and convincing evidence to the contrary." Id.

In an effort to meet the clear and convincing evidentiary standard set forth in the statute, the plaintiffs point to the lack of intent to vest title in the defendant and the defendant's representations that the accounts were created by the decedent for convenience in accessing funds for expenses. Even if we assume that to be true,

it is not inconsistent with an intent to vest title. The decedent may well have created a joint account with the defendant intending that the defendant use it to help pay the decedent's expenses and that anything left upon his death would go to the defendant. This scenario is consistent with all of the evidence put forward by the plaintiffs for the opposite conclusion. We cannot conclude that the plaintiffs have shown by clear and convincing evidence that the decedent did not intend to vest the defendant with title to whatever funds remained.

Because there is no evidence to indicate that the trial court abused its discretion and because the court's finding is not necessarily inconsistent with the evidence proffered by the plaintiffs to show a lack of intent to make a joint account, we decline to disturb the court's finding in this regard. We therefore conclude that the trial court properly refused to order the defendant to turn the proceeds of that account over to the estate for distribution to the plaintiffs as residuary legatees.

## IV

Finally, the plaintiffs claim on their cross appeal that the trial court improperly refused to order the defendant to turn over the shares of the Tompkins Trust stock that he received from the estate. We agree and reverse the trial court's decision in this regard.

In its memorandum of decision, the trial court held that the defendant had the authority, under General Statutes § 45a-234, to transfer the shares of stock to anyone, including himself. This thus represented the trial court's conclusion on the proper interpretation and application of the statutory provision.

There are two issues in this case regarding the defendant's transfer to himself of common stock held by the estate. The first concerns the defendant's reason for

transferring the stock. The defendant stated that part of the reason for this transfer was to pay the estate and succession taxes for which insufficient cash was present in the estate. As discussed in part II of this opinion, however, a significant portion of those taxes was the responsibility of the defendant personally and not of the estate. It was inappropriate for the defendant to "reimburse" himself from the estate for his payment of taxes that were his personal responsibility to begin with.

The other issue concerns the fact that the stock was received from the Adaleen Winton Trust.[8] Article III of the decedent's will provided, specifically, that his interest in that trust should be distributed in accordance with the residuary distribution clause of the will, namely, equally to the plaintiffs and the defendant and to their children if deceased. Thus, under the terms of the will, even if the defendant had not transferred the stock to himself, he would have been entitled to 25 percent of it in any event.

The plaintiffs are correct that the properties over which the fiduciary has control are held by him in trust for the beneficiaries. Our Supreme Court has stated that the executor or trustee "holds [property] under a quasi trust for those entitled to it . . . subject, however, to diminution or destruction if necessary to pay claims on the estate or the expenses of administration." *Parlato* v. *McCarthy*, 136 Conn. 126, 132–33, 69 A.2d 648 (1949). Thus, upon the death of the decedent, the plaintiffs and the defendant all had an interest in the stock that was part of his estate. In this case, the plaintiffs also specifically informed the defendant that they

[8] The will itself refers to the estate of Adaleen Winton. Because the only interest the decedent had was in the Adaleen Winton Trust, which belonged to his wife and passed to him at her death, the trial court referred throughout its opinion to the Adaleen Winton Trust and the parties have not taken issue with that reference.

desired to have the actual shares transferred to them, rather than being paid the value.

The defendant, presumably in good faith, used those shares to reimburse himself for moneys he had expended out of his own funds to pay the estate and succession taxes, inflated as they were by the inclusion of the tax on the prior gift of the Bunting & Lyon stock and the building. As discussed previously in this opinion, the liability for the tax on the transfer of the Bunting & Lyon stock and the building was the defendant's alone, and the tax on those gifts should not have been paid out of the estate. Evidence adduced at trial showed that had the estate paid only the taxes it was obliged to pay, there was enough ready cash in the estate to pay those taxes without liquidating securities. Thus, the defendant improperly used the stock to reimburse himself for expenses that were his, namely, the taxes on the prior gift.

Because the estate property was used to pay taxes it was not liable for, the property should be returned and the estate made whole. "Making the estate whole" in this case means returning the estate to the position it would be in had the original transfer not taken place. The only way that can truly be done is to return the shares to the estate. This is possible in this case because the defendant and his wife still hold the shares they obtained in this fashion.

In addition, returning the stock to the estate for distribution most closely matches the intent of the decedent because the will directs that the decedent's "interest" in the trust be "distributed in accordance with the provisions of this Article III." It does not provide that the *proceeds* of the trust be distributed, but that the decedent's *interest* be distributed. That would mean that each of the four beneficiaries named in the residual clause would become an owner of an equal interest

in the assets of that trust. As noted previously, the decedent's intent is the touchstone of will interpretation, and here the intent to distribute the interest in the trust property, rather than to have the property sold and the proceeds distributed, is clearly indicated.

Accordingly, we reverse the judgment of the trial court and remand the case to the Superior Court with direction to remand the case to the Probate Court to administer distribution of the stock itself, including all dividends and split shares received since the death of the decedent, as long as there are sufficient funds to pay the costs of administration and estate taxes in accordance with this opinion.

Any funds in the estate should first be used to pay administration costs and those federal and state taxes that are the estate's responsibility as explained previously. The defendant should be reimbursed to the extent he has used his personal funds to pay estate taxes, but he should reimburse the estate for the taxes related to the inter vivos transfer to him. Once that is done, the remaining shares of stock should be distributed to the plaintiffs and the defendant according to the terms of the will.

## V

On the defendant's appeal, the judgment is reversed only insofar as it orders a proration of the estate and succession taxes on assets other than the building and the Bunting & Lyon stock, and the case is remanded to the Superior Court with direction to remand it to the Probate Court with direction to treat the taxes on the assets other than the building and the Bunting & Lyon stock as expenses of administration and to charge the defendant individually the taxes attributable to the transfer of the building and the Bunting & Lyon stock. On the plaintiffs' cross appeal, the judgment is reversed with respect to the Tompkins Trust stock and the case

is remanded to the Superior Court with direction to remand it to the Probate Court with direction to effect the return of the shares of the Tompkins Trust stock, including all dividends and split shares received subsequent to the transfer of the shares to the defendant, and to distribute the same in accordance with this opinion. In all other respects, the judgment is affirmed.

In this opinion FOTI, J., concurred.

PELLEGRINO, J., dissenting. I agree with parts III and IV of the majority opinion. I respectfully disagree, however, with the majority's decision in parts I and II as it relates to the taxation of the inter vivos gifts of the Bunting & Lyon stock and real estate.

I cannot agree with the majority's conclusion that the portion of the tax clause in the will that provides that "any estate, succession, inheritance, death or transfer tax arising by reason of or in connection with my death" is confusing and is "latently ambiguous." I fail to see any ambiguity in that provision of the will and therefore I think that the trial court improperly permitted extrinsic or parol evidence to determine the decedent's intent as to that clause. I believe that the majority improperly affirmed the trial court's finding that the decedent's intent as to the allocation of taxes in connection with the inter vivos transfers was contrary to his intent expressed in his will.

My disagreement with the majority stems from the fact that before the court can consider any extrinsic evidence to vary the terms of a will, it must determine that there exists either a latent or patent ambiguity. *Hoenig* v. *Lubetkin*, 137 Conn. 516, 519, 79 A.2d 278 (1951). Our review of this issue is plenary. *Issler* v. *Issler*, 250 Conn. 226, 235–36, 737 A.2d 383 (1999).

The majority agrees that the language of the tax clause in the will standing alone is not ambiguous. The

majority contends, nevertheless, that Article I of the will contains a latent ambiguity, which it defines as an ambiguity arising from " 'extraneous or collateral facts which make the meaning of a written instrument uncertain although the language thereof be clear and unambiguous.' " The majority concludes that because no person who participated in the drafting of the will envisioned the need to deal with the gift of stock and property given by the testator to the defendant prior to the execution of the will, a latent ambiguity was created.

The majority relies on *Connecticut National Bank & Trust Co.* v. *Chadwick*, 217 Conn. 260, 585 A.2d 1189 (1991), in support of its conclusion that the phrase in the tax clause previously mentioned is latently ambiguous. That case, however, is easily distinguished from the present one. In *Connecticut National Bank & Trust Co.*, the word in the will that was found to be ambiguous was the reference to "grandchild," and the problem and uncertainty in that case was whether "grandchild" included the adopted children of the testator's son. Id., 261–62. With this uncertainty existing, the trial court was permitted to consider extrinsic evidence to resolve the latent ambiguity. Id., 270. The majority relies on *Stearns* v. *Stearns*, 103 Conn. 213, 221, 130 A.2d 112 (1925), for the proposition that "[w]e admit parol evidence of the meaning of the testator in the use of some *term or word* in a will when the meaning is equivocal or ambiguous." (Emphasis added.) There is nothing ambiguous or uncertain in the phrase "any estate, succession, inheritance, death or transfer tax arising by reason of or in connection with my death . . . ." Only after considering extrinsic evidence that at the time the will was drafted there was no discussion about the taxability of the inter vivos gifts did the majority conclude that the tax clause was capable of two meanings and was, therefore, latently ambiguous. In my estimation, this reasoning puts the cart before the horse. I

believe that the majority should have concluded not only that the language was not patently ambiguous, but also that it was not latently ambiguous, and that it should have reversed the judgment of the trial court for those reasons.

The majority did, however, find that the portion of the tax clause that provides "without apportionment or contribution" is clear and unambiguous as to the assets passing under the will, and I agree. Because the language was not ambiguous, the majority reverses the trial court's decision, but only as to those assets passing under the will. I find the language of the entire tax clause to be clear and unambiguous and, therefore, I would reverse the decision of the trial court and order that all the taxes be paid as an expense of administration as provided by the decedent in his will.

Accordingly, I respectfully dissent.