[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These four consolidated cases involve two decedents' estates, both probated in the Stamford Probate Court. The Probate Judge. Hon. Gerald M. Fox. Jr., made certain rulings regarding the inventories in the estates of both decedents, which rulings are the subject of these four appeals from probate.
An appeal from probate to the Superior Court is authorized by General Statutes § 45a-186. It is well recognized that in such an appeal this court sits as a court of probate and acts de novo. Kerin v. Stangle,209 Conn. 260, 264, 550 A.2d 1069 (1988). The appellants are all found to be aggrieved as the decisions of the Probate Court have a direct pecuniary effect on each. Kucej v. Kucej, 34 Conn. App. 579, 582,642 A.2d 81 (1994).
Pasquale Tarzia died on November 19, 1990, and his surviving spouse, Immacolata Tarzia, was appointed as the executrix of his estate. His eldest daughter, one of the appellants in these cases, Rosa Pensiero, was named as the successor executrix. Both Mr. Tarzia and Mrs. Tarzia executed reciprocal wills in 1985. In his last will and testament, Mr. Tarzia left his entire estate to his wife, but, if she had predeceased him, which she did not, the residuary would have been divided into three equal parts and distributed to his three daughters, Rosa Pensiero, Stella Lopreiato and Lucy Sorbana. Two sons of the marriage, as well as children CT Page 1084 of Mr. Tarzia from a former marriage, were not named as beneficiaries of Mr. Tarzia's estate and are not involved in these appeals.
Mrs. Tarzia survived her husband by about thirteen months and died on December 12, 1991. Her will left everything to her three daughters. since her husband. the primary beneficiary, predeceased her. Mrs. Tarzia named the eldest daughter, Rosa Pensiero, as her executrix. However, because of disputes among the three daughters, the Probate Court appointed Attorney James F. Simon as administrator, c.t.a., d.b.n. for the estates of both Mr. and Mrs. Tarzia. Attorney Simon filed inventories in both estates, and these filings precipitated the various appeals from the Stamford Probate Court to this court.
The first of the above captioned appeals, CV 96 0153681, involves the estate of Pasquale Tarzia and a purported gift by Mr. Tarzia to his daughter, Rosa Pensiero, in the amount of $24,187.24. The Probate Court ruled that "there is insufficient corroborative evidence of a gift" and that this sum should be returned to Mr. Tarzia's residuary estate to be divided in equal shares for the three sisters. This appeal also concerns a stock account in the Putnam High Yield/Securities fund, a mutual fund, held in the joint names of Mr. Tarzia and Rosa Pensiero with survivorship. The Probate Court ruled that this account, which amounted to approximately $12,800, should be surrendered to the administrator and included in Mr. Tarzia's estate. Mrs. Pensiero has appealed both rulings.
Mrs. Pensiero is also the appellant in the second appeal, CV 96 0153682, which concerns the estate of Immacolata Tarzia. This case also involves the same purported gift to Rosa Pensiero from her father, and additionally a stock account with the Pilgrim Prime Rate fund, a mutual fund, in the approximate amount of $115,000, held in the names of Mrs. Tarzia, Rosa Pensiero and Stella Lopreiato, as joint tenants with right of survivorship. This appeal also involves certain bank accounts at First County Bank, including two certificates of deposit, held in the names of Mrs. Tarzia and Rosa Pensiero and Stella Lopreiato as joint and survivorship accounts. These accounts totaled about $28,000. The Probate Court ruled that Mrs. Tarzia placed these accounts in joint names only as a "convenience" and that she had retained full ownership thereof at the time of her death.
Stella Lopreiato and Lucy Sorbara and their respective husbands, Dominick Lopreiato and Ralph Sorbara, are the appellants in the third and fourth appeals, CV 96 0153868, which involves the estate of Mr. Tarzia, and CV 96 0153869, involving the estate of Mrs. Tarzia. Both cases concern a purported "Special Power of Attorney" executed by Mr. Tarzia in favor of Dominick Lopreiato, his son-in-law. Mr. Lopreiato used the power CT Page 1085 of attorney to remove certain funds belonging to Mr. Tarzia from a bank in Italy where they had been on deposit, in the total amount of approximately 90, 000, 000 lira which currently represents about $45,000. The Probate Court ordered that these funds be returned to the decedents' estates.[1]
The Probate Court, obviously seeking an equitable and logical resolution of the disputes, ruled that all of the funds involved in the gift, the stock funds, the bank accounts and the money in Italy, be returned to the decedents' estates and distributed equally to the three daughters.
Addressing first the question of the purported gift to Mrs. Pensiero, the evidence indicates that while a patient in St. Joseph Medical Center a few weeks before his death, Mr. Tarzia gave Rosa Pensiero, who was visiting him, a check for $24,187.24, which Mrs. Pensiero deposited in her own account. The check had been received by Mr. Tarzia in settlement of other litigation. The check was endorsed in blank. Mrs. Pensiero testified that her father said at the time he handed the check to her that it was a gift.
Mrs. Pensiero's two sisters are challenging the validity of this purported gift. The proceeds of the gift were included in an inventory of Mr. Tarzia's estate by his attorney, Everett Sherwood, Esquire, who testified that this was his mistake. When Mrs. Tarzia died, this same amount was also included in the inventory filed by Attorney Simon in her estate.
"To make a valid gift inter vivos, the donor must part with control of the property which is the subject of the gift with an intent that title shall pass immediately and irrevocably to the donor. The burden of proving the essential elements of a valid gift rests upon the party claiming the gift." (Citations omitted.) Kriedel v. Krampitz,137 Conn. 532, 534, 79 A.2d 181 (1951).
It is clear that Mr. Tarzia gave his daughter Rosa Pensiero the check in question. The issue is whether he intended to actually make a gift to her. The appellants in this case claim that Mr. Tarzia simply intended that Rosa deposit the check in his own account and did not intend to give her the money. They also introduced some evidence to the effect that Mrs. Tarzia urged Rosa to return the money, although the evidence on this point is ambiguous and irrelevant as the purported donor was Mr. Tarzia. What is clear, however, is that Rosa Pensiero, the oldest sister and the only one who lived in Stamford, spent a great amount of time and expended a great deal of effort helping Mr. Tarzia during the last years of his life. In fact, there was criticism from others that she neglected her own CT Page 1086 husband and children in order to take care of her father and also her mother. Moreover, Mrs. Pensiero, a hair dresser, gave up her job at Lord Taylor in order to be more available to her parents. It is certainly logical and understandable that Mr. Tarzia might want to do something special for the daughter who devoted so much time and effort to assist him in the latter years of his life.
When an estate is a party to litigation, the burden is on the person claiming the gift to prove the claim by "clear and satisfactory proof."Dalia v. Lawrence, 226 Conn. 51, 70, 627 A.2d 392 (1993). "The phrase clear, substantial and convincing evidence fairly characterizes that degree of belief that lies between the belief that is required to find the truth or existence of the issuable fact in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. In cases such as this which require such a showing of proof. the burden of persuasion is sustained if the evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Citations omitted; internal quotation marks omitted.) Lopinto v.Haines, 185 Conn. 527, 534, 441 A.2d 151 (1981).
Mrs. Pensiero has sustained her burden of proof by clear and convincing evidence that this inter vivos gift was valid. The two prerequisites of a gift were established, delivery and intent, with intent being inferred by the great amount of care and service supplied by Mrs. Pensiero to her late father. Moreover, although Mr. Tarzia was in the hospital at the time he handed the check to his daughter, the evidence indicates that he had sufficient mental capacity to make a gift.
The next disputed transaction involves a stock account with the Putnam High Yield Fund, a mutual fund.This account was opened in 1987 by Rosa Pensiero using her own funds in the approximate amount of $10,000, and using her own social security number. The account was place in the names of herself and her father as joint tenants with survivorship. Mrs. Pensiero paid income tax on the income from this fund. There was testimony by Rosa that her motivation in putting her father on this account was to hide the funds from her husband. Her husband found out about the account in any event, but this has no particular significance with respect to ownership of the account. After Mr. Tarzia's death, Mrs. Pensiero put the money into a joint account with her mother and some of the funds were used for Mr. Tarzia's funeral expenses. Mrs. Pensiero was the survivor of this mutual fund account after her father's death, and has successfully sustained her burden of proving, by clear and convincing evidence, that the stock account belonged to her as the survivor.[2]
CT Page 1087
The next transaction involves the Pilgrim Prime Rate account in the approximate amount of $115,000. Mrs. Tarzia opened this account in joint names first just with Rosa Pensiero, and then later she added Stella Lopreiato as another survivor. She did not include the other daughter, Lucy Sorbara. The challenge to the existence of this joint securities account is to no avail. Mrs. Tarzia created the account and the two older sisters are the designated surviving beneficiaries. Again, the appellant, Mrs. Pensiero, has successfully sustained her burden of proving, by clear and convincing evidence, that the account is not properly a part of Mrs. Tarzia's estate for purposes of survivorship. Mrs. Pensiero testified credibly that Mrs. Tarzia told her that, on the mother's death, she wanted Rosa and/or Stella to obtain the proceeds of that account.
There are four joint bank accounts, including two certificates of deposit, created by Mrs. Tarzia with Rosa as the surviving beneficiary. General Statutes § 36-3[3] creates a presumption that the survivor of a joint bank account is entitled to the proceeds upon the death of the other owner. The only exceptions are fraud, undue influence, or other "clear and convincing evidence." No such fraud, undue influence or other clear and convincing evidence was introduced at the trial by Mrs. Pensiero's two sisters. The objections to the disposition of these joint bank accounts with survivorship are therefore overruled. Manulik v.Devitt, 176 Conn. 663, 667-68, 410 A.2d 469 (1979). Moreover, as held inCooper v. Cavallaro, 2 Conn. App. 622, 627, 481 A.2d 101 (1984), the survivor's right to receive the proceeds is not adversely affected by the survivor's status as a child and/or executor unless a fiduciary relationship has been established, and no such relationship was demonstrated in this case.
The Probate Court ruled that these accounts were created by Mr. Tarzia as a "convenience." "Even if we assume that to be true, it is not inconsistent with an intent to vest title. The decedent may well have created a joint account with the defendant intending that the defendant use it to help pay the decedent's expenses and that anything left upon his death would go to the defendant." Bunting v. Bunting,60 Conn. App. 665, 680-81, 760 A.2d 989 (2000). Thus, the joint bank accounts are now owned by Rosa Pensiero and Stella Lopreiato with right of survivorship.
Finally, a mysterious aspect of this case involves the power of attorney dated June 27, 1988, which was signed by Mr. Tarzia after he left the hospital and was home. One of the elements of mystery is why Mr. Tarzia went to Dobbs Ferry, New York, before a notary public in that city, Francesco DiMario, to execute the power of attorney in favor of his son-in-law, Dominick Lopreiato. when, on previous occasions, he had used CT Page 1088 a friend, Mr. Genaro Signore, of Stamford, as his notary. No one could testify as to how Mr. Tarzia, who did not drive at that time, ever went to Dobbs Ferry and with whom.
The other bizarre element of this transaction is that Mr. Lopreiato testified that he and his brother-in-law, Ralph Sorbara, loaned money to their father-in-law in the early 1980s, and Mr. Tarzia gave Mr. Lopreiato a power of attorney so that he could repay himself and Mr. Sorbara. The evidence, however, indicated that Mr. Tarzia was a relatively successful and astute businessman who had no need to borrow anything from his two sons-in-law. There was no note or any record of any such loans, which were described by Mr. Lopreiato as being in cash only. The testimony of Mr. Lopreiato and Mr. Sorbara regarding Mr. Tarzia's motivation in establishing the power of attorney is not credible.
Whatever his motive, the fact remains that Mr. Tarzia did execute a power of attorney which authorized Mr. Lopreiato as his agent "to close and collect the available cash balance in the below numbered accounts bearing Pasquale Tarzia's name" at the bank known as "Carical Bank" in Catanzaro, Italy. Mr. Tarzia also gave Mr. Lopreiato three savings bank books corresponding to the numbers listed in the power of attorney. Mr. Lopreiato went to Italy in the summer of 1988 and, armed with the bank books and power of attorney, removed thousands of lira from Mr. Tarzia's bank accounts and distributed the money to himself, his wife, and to the Sorbaras.
Rosa Pensiero claims that the execution of the power of attorney was based on fraud or undue influence upon Mr. Tarzia by the Lopreiatos. She was not able to offer any proof of these claims. Mr. Tarzia signed the power of attorney and gave the bank books to Mr. Lopreiato. Furthermore, there was uncontradicted testimony that the bank books were returned to Mr. Tarzia with clear indications that the funds in the Italian bank accounts had been withdrawn. In fact, the bank books were held by Mr. Tarzia for about two and a half years before he died. There was no evidence that Mr. Tarzia in any way attempted to repudiate the action of his son-in-law, Mr. Lopreiato, in withdrawing the money from the Italian bank accounts.[4] It is not entirely clear where the burden of proof lies, but the court has taken the position that the Lopreiatos and the Sorbaras must prove the validity of the power of attorney by clear and convincing evidence just as Mrs. Pensiero had to prove the validity of her purported gift. The appellants have sustained that burden and hence this court is not ordering that the funds from Italy be returned to either of the decedent's estates.[5]
In conclusion, as stated previously, some might believe that a more fair and equitable distribution of the estates of Pasquale Tarzia and CT Page 1089 Immacolata Tarzia might well be to distribute all the money above discussed in equal shares to the three daughters.[6] However, this court has to take the facts as found to be credible and apply them to our law including the requirements regarding the burden of proof. The parties suggest that Mr. Tarzia's motivation in establishing joint bank and mutual fund accounts and in giving a power of attorney may have been to avoid probate or death taxes. The fact remains, however, that he did make certain voluntary financial arrangements during his lifetime and the daughters, three of the appellants in these appeals, have to live with these arrangements, no matter how unfair they believe them to be.
The inventories by Attorney Simon, therefore, should not include any of the transactions discussed in this memorandum. These cases are remanded to the Probate Court for further proceedings.
So Ordered.
Dated at Stamford, Connecticut, this 18th day of January, 2001.
William B. Lewis, Judge T.R.